UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

D.B.,

                             **Plaintiff,**

  vs.                                                            1:22-cv-282
                                                                   (MAD/CFH)

**ANN MARIE T. SULLIVAN, MD,** *Commissioner, Office of Mental Health, in her Individual and Official Capacity*, **ROSSANA ROSADO,** *Commissioner, Criminal Justice Services, in her Official Capacity*, **"JOHN DOES 1-5," and "JANE DOES 1-5,"**

                             **Defendants.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**THE BELLANTONI LAW FIRM, PLLC**     **AMY L. BELLANTONI, ESQ.**
2 Overhill Road, Suite 400
Scarsdale, New York 10583
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**     **MELISSA A. LATINO, AAG**
**ATTORNEY GENERAL - ALBANY**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On March 23, 2022, Plaintiff D.B. commenced this action under 42 U.S.C. § 1983 against Defendants for violating his Second, Fourth, and Fourteenth Amendment rights. *See* Dkt. No. 1. Seeking declaratory and injunctive relief, as well as punitive, economic, and compensatory damages, Plaintiff claims that, despite his efforts to recover his rights through state remedies such

as an application for a Certificate of Relief from Civil Disabilities Related to Firearms and subsequent Article 78 proceedings, Defendants denied--and continue to deny--him his constitutional right to purchase a firearm by improperly reporting him to the SAFE Act Database and National Instant Criminal Background Check System ("NICS"). *See id.*

Defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting *res judicata*, collateral estoppel, expiration of the statute of limitations, Eleventh Amendment immunity, and lack of personal involvement as defenses. *See* Dkt. No. 12. Plaintiff has opposed Defendants' motion, arguing that the motion should be denied in its entirety. *See* Dkt. No. 15.

Presently before the Court is Defendants' motion to dismiss.

## II. BACKGROUND

**A.  Event In Question**

In 2014, Plaintiff was subjected to an emergency psychiatric evaluation and observation at Samaritan Hospital. *See* Dkt. No. 1 at ¶ 53. Plaintiff was released from Samaritan Hospital within 72 hours, and his emergency evaluation was never converted to an "involuntary commitment." *See id.* at ¶¶ 55-56.

**B.  Plaintiff Obtains a Gun License in Commonwealth of Massachusetts**

In May 2015, Plaintiff sought out his former psychiatrist, Dr. Brian J. Mazmanian, because "a hospitalization . . . in New York for a temper outburst that created a red flag when he was applying for a gun permit" in his home state of Massachusetts. *See* Dkt. No. 12-4 at 28. Dr. Mazmanian's 2015 letter opined that Plaintiff was "not disabled by such present mental illness in any manner that should prevent him from possessing a firearm" and that "[h]is medications are

2

seen as being stable and safe." *Id.* at 29.  According to the Article 78 record, Plaintiff was issued a License to Carry Firearms in the Commonwealth of Massachusetts.  *See id.* at 38.

**C.      Plaintiff Attempts to Purchase a Firearm**

In 2019, Plaintiff attempted to purchase a .22 caliber hunting rifle in Massachusetts.  *See* Dkt. No. 1 at ¶ 64.  NICS issued a "Deny" when the Federal firearm licensee ("FFL") conducted the requisite background check before transferring the rifle to Plaintiff.  *Id.* at ¶ 67.  Plaintiff came to know that NICS denied his purchase because of him being "involuntarily committed" to a mental health facility, in reference to Plaintiff's 2014 time at Samaritan Hospital.  *Id.* at ¶ 69.

**D.      Certificate of Relief from Civil Disabilities Related to Firearms**

On April 3, 2020, Plaintiff submitted his application for a certificate of relief from civil disabilities related to firearms for purposes of removing his name from the NICS database and restoring his right to own a firearm.  *See* Dkt. No. 12-4 at 18.  On December 2, 2020, Plaintiff's application was denied because the panel was unable to conclude that Plaintiff would not be a danger to public safety.  *See id.* at 97-99.  Specifically, the panel could not establish that Plaintiff "ha[d] sufficiently resolved the problems that contributed to his involuntary commitment, nor . . . gained the skills and understanding to manage symptoms appropriately and safely on an ongoing basis." *Id.* at 99.

**E.      Article 78 Proceedings to present**

On March 31, 2021, Plaintiff filed a petition for an Article 78 proceeding to review the denial of his application for a certificate of relief from disabilities related to firearms.  *See* Dkt. No. 12-2.  Plaintiff named as respondents Defendant Sullivan, the New York State Office of Mental Health, and the Office of NICS Appeals and SAFE Act ("Respondents"), asserting that their determination was "arbitrary, capricious, and without foundation in fact." *Id.* at 4.  On June

4, 2021, Respondents answered, seeking dismissal of the action, and reaffirming that "[h]is [August 2014] admission to Samaritan Medical Center constituted an involuntary commitment...." *See* Dkt. No. 12-4 at 8. On November 10, 2021, the Supreme Court of New York in Albany County issued its Article 78 decision, finding that Respondents "did not err in their determination denying the petitioner's application[.]" Dkt. No. 12-3 at 5.[1]

On March 23, 2022, Plaintiff commenced this action asserting that Defendants' actions have violated his rights under the Second, Fourth, and Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 1. Currently before the Court is Defendants' motion to dismiss. *See* Dkt. No. 12.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the

---

[1] The Court takes judicial notice of the filings in these proceedings. *See Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 454 (S.D.N.Y. 2021); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings") (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557. Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

In deciding a motion to dismiss, the court may consider "documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken[.]" *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citing *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (other citation omitted). "Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint." *Id.* (citing *Cortec Indus., Inc. v. Sum Holding,*

5

*L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)).  Given the arguments before it, the Court has taken judicial notice of all materials related to Plaintiff's application for his Certificate of Relief of Civil Disabilities Related to a Firearm and the Article 78 proceedings.

**B.     *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]" *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).  The doctrine is grounded in the principle that 28 U.S.C. § 1257 vests jurisdiction to hear appeals from the highest court of each state exclusively in the United States Supreme Court.  *See* 28 U.S.C. § 1257.  District courts may not, therefore, adjudicate what are in essence *de facto* appeals from state court judgments.  *See Exxon*, 544 U.S. at 291–92.  The doctrine is jurisdictional, and not grounded in the same considerations as preclusion law.  *See id.* at 292–93.  The application of the *Rooker-Feldman* doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those arguments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citing *Exxon*, 544 U.S. at 284).

The Second Circuit has set forth a four-pronged test to determine whether *Rooker-Feldman* precludes a federal district court from exercising jurisdiction over a claim:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" – *i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with

6

>ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*Id.* (internal footnote omitted); *see also MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 137-38 (E.D.N.Y. 2006).

At issue here, the Court must determine whether Plaintiff may proceed with his claims here, given that Plaintiff lost in state court in his Article 78 proceeding. Plaintiff meets the first prong. In considering the second prong, *i.e.*, whether Plaintiff complains of an injury caused by a state-court judgment, the Second Circuit has explained that

>a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Hoblock*, 422 F.3d at 88. Furthermore, courts have noted that

>the injury in question derives from the state court decision when that judgment constitutes the "source of the injury," as opposed to being merely a court adjudication expressly affirming or otherwise leaving undisturbed a determination made by a third party that embodies the wrongful conduct the plaintiff asserts brought about the claimed harm in the first instance.

*Sindone*, 439 F. Supp. 2d at 272 (citing *Hoblock*, 422 F.3d at 86). Thus,

>[the] causal requirement may be satisfied under two circumstances that emerge from the facts in *Hoblock* and the Second Circuit's interpretation of *Exxon Mobil*: (1) where, as in *Feldman*, the state court itself is the decision-maker whose action produces the injury the plaintiff challenges in the federal suit, or (2) where, as in *Hoblock*, the underlying harmful action complained about was actually taken by a third party in compliance with an order embodied in a judgment of a state court.

7

*See id.* at 272–73 (footnotes omitted).

In the present case, Plaintiff alleges that the denial of his right to own and purchase a firearm was in violation of 42 U.S.C. § 1983 because "Defendants falsely communicated to the federal government that [he] had been 'involuntarily committed' to a mental health facility." *See* Dkt. No. 1 at ¶ 70. Although this issue was raised by Plaintiff in his Article 78 proceeding, according to the decision of the New York State Supreme Court, Plaintiff was merely seeking review of his application for a certificate of relief from disabilities related to firearm possession. *See* Dkt. No. 12-3 at 1. The source of Plaintiff's alleged injury does not directly extend from the ruling of the court in the Article 78 proceeding, but rather from the alleged reporting of Plaintiff to the SAFE Act database. Furthermore, the OMH's decision to deny Plaintiff's certificate of relief was not prompted by an order of any state court. Thus, the state court's denial of Plaintiff's Article 78 petition "merely 'ratified, acquiesced in, or left unpunished' the decision" rendered by the OMH. *See Sindone*, 439 F. Supp. 2d at 274 (quoting *Hoblock*, 422 F.3d at 88) ("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment").

Accordingly, the Court concludes that it has jurisdiction and may exercise it to decide the substance of Defendants' motion to dismiss.

**C.     *Res Judicata* and/or Collateral Estoppel**

Defendants contend that, because Plaintiff claims in the instant proceeding arise from the same facts and circumstances as those asserted in the prior Article 78 proceeding "and Plaintiff previously had the opportunity to litigate the central claims asserted in this § 1983 action in the prior state court proceeding, his claims are barred by *res judicata*." Dkt. No. 12-5 at 4. Similarly, Defendants claim that Plaintiff's constitutional claims are barred by collateral estoppel. *See id.* at

9-10. In response, Plaintiff argues that *res judicata* does not preclude his claims because he could not have raised his constitutional claims in the Article 78 proceeding, which was limited in scope to a judicial determination of whether the December 2, 2020, decision of the Office of NICS Appeals and SAFE Act was arbitrary and capricious. *See* Dkt. No. 15 at 10-11. Plaintiff also contends that collateral estoppel is inapplicable because there is no identity of issues between the Article 78 proceeding and the present matter. *See id.* at 13-15.

> "Under the doctrine of res judicata, a final disposition on the merits bars litigation between the same parties of all other claims arising out of the same transaction or out of the same or related facts, even if based upon a different theory involving materially different elements of proof. The rule applies not only to claims litigated but also to claims that could have been raised in the prior litigation."

*Shelley v. Silvestre*, 66 A.D.3d 992, 993 (2d Dep't 2009) (quotation and other citation omitted).

> Collateral estoppel, together with its related principles, merger and bar, is but a component of the broader doctrine of *res judicata* which hold that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action.

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485 (1979) (citation omitted). The Court will examine the claims under each doctrine separately.

### 1. Res Judicata

"'The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law.'" *Ponterio v. Kaye*, No. 06 Civ. 6289, 2007 WL 141053, *6 (S.D.N.Y. Jan. 22, 2007) (quotation and other citations omitted); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In New York, *res judicata* bars an action if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action

9

were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).  Under New York's "'transactional approach' to res judicata," "if claims arise out of the same 'factual grouping' they are deemed to be part of the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (quotation and other citations omitted).  Therefore, "a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008) (quotation omitted).

However, the "bar against later claims based upon the same cause of action is ... subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson*, 792 F.2d at 278.  Where the Article 78 proceeding could not award the full measure of relief sought in a later action arising out of the same facts, including damages for civil rights violations, the Article 78 proceeding "[does] not bar a later civil rights claim even where ... it is based upon the same cause of action as the Article 78 proceeding." *Id.* at 282.

Here, Defendants argue that *res judicata* requires dismissal of Plaintiff's claims because the instant proceeding arises from the same facts and circumstances as those asserted in the prior Article 78 proceeding, during which Plaintiff had the chance to raise the constitutional claims central to his Section 1983 action.  *See* Dkt. No. 12-5 at 2.  Plaintiff counters that the claims in the Article 78 proceeding do not bar the constitutional claims asserted in the present case because (1) Article 78 proceedings are not a proper vehicle for constitutional claims; (2) he was not required to bring such claims; (3) the full scope of relief sought presently, including damages, is not

10

available in Article 78 proceedings; and (4) that the Second Amendment allegations require heightened scrutiny from the Court as opposed to the state court's review of an agency's determination under the "arbitrary and capricious" standard. *See* Dkt. No. 15 at 10-12. Accordingly, because Plaintiff could not have recovered damages for Defendants' alleged civil rights violations in his Article 78 proceeding, Plaintiff's claims are not barred by *res judicata*.

Defendants further argue that because Plaintiff did not assert constitutional violations in the Article 78 petition, the claims are precluded as in *Kern v. Joyce*, 857 Fed. Appx. 691 (2d Cir. 2021). *See* Dkt. No. 12-5 at 4. Defendants are misguided. In *Kern*, the plaintiff's Section 1983 claims were barred by *res judicata* applied to a prior Article 78 proceeding because the plaintiff did not seek damages in federal court, but simply the same relief of vacating an ALJ's determination. *Kern*, 857 Fed. Appx. at 694. Thus, because Plaintiff in the instant case seeks damages as well as injunctive relief, it is distinguishable from the situation in *Kern*.

As noted, generally *res judicata* "does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter." *Colon v. Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). But there is an important exception to that rule: It does not apply to "hybrid" state-court proceedings in which (1) a plaintiff sought both Article 78 relief and forms of relief that are not available in an Article 78 proceeding and (2) the state court ruled on the requests for non-Article 78 relief. *See Corbett v. City of New York*, 816 Fed. Appx. 551, 553-34 (2d Cir. 2020).

Here, Plaintiff's state-court action was a simple Article 78 proceeding, and not a "hybrid" action. Rather, the petition makes clear that it was brought solely pursuant to Article 78 and the only relief sought was a judgment "nullifying, setting aside, and voiding as arbitrary, capricious

11

and/or illegal Respondent's December 2, 2020 denial of Petitioner's application for a Certificate of Relief to remove his personal identifying information from the New York SAFE Act mental health database as a 'prohibited person' disqualified from the lawful possession of firearms[.]" Dkt. No. 12-2 at 15.  Additionally, a review of the state court's decision reveals that it was in no way treated as a hybrid proceeding where Plaintiff could have raised the constitutional claims brought here.  As such, *res judicata* does not preclude Plaintiff's federal claims in this action.  *See Cantore v. New York City Law Dep't*, No. 19-cv-3879, 2020 WL 13444018, *4 n.2 (E.D.N.Y. Sept. 28, 2020) (holding that the plaintiff's constitutional claims were not precluded by a prior Article 78 proceeding where the state proceeding was not treated as a hybrid proceeding and where the state court only held that the state agency's decision was not arbitrary, capricious, or wholly irrational); *see also Corbett*, 816 Fed. Appx. at 554 (noting that a simple Article 78 proceeding generally would not bar a subsequent Section 1983 proceeding but holding that the plaintiff's prior state court action was a hybrid proceeding where the plaintiff sought both Article 78 relief and (1) a declaration that the proper-cause requirement for a firearm business-carry permit is facially unconstitutional and (2) relief under the Freedom of Information Law).

Accordingly, the Court denies this aspect of Defendants' motion.

### 2. Collateral Estoppel

The doctrine of issue preclusion, also known as collateral estoppel, "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *see also Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996).  The doctrine of collateral estoppel will apply "to actions brought pursuant to 42 U.S.C. § 1983." *Coughlin*, 88 F.3d at 59.

The party asserting issue preclusion bears the burden of showing that the identical issue was decided in the prior proceeding. *See 33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282, 298 (N.D.N.Y. 2012).

Since Defendants are the party asserting issue preclusion, they bear the burden of proving identity of the issues. Defendants argue that because Plaintiff is contesting in this matter the "underlying circumstances which triggered the reporting of his involuntary admission into a psychiatric hospital to the NICS database," which also served as the foundation of the Article 78 proceeding, the issues are identical. *See* Dkt. No. 12-5 at 9. The Court disagrees.

"Issues are considered identical if a different decision in the second suit would necessarily 'destroy or impair rights or interests established by the first.'" *In re Application of the Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) (quotation omitted). The issues to be decided in this matter include whether Defendants violated Plaintiff's constitutional rights by maintaining and reporting to the federal NICS system information about individuals, including Plaintiff, who have no alleged legal or factual disqualification to the purchase, possession, or transfer of firearms; whether Plaintiff's right to due process was violated by the lack of any pre- or post-deprivation notice that his information would be maintained in the SAFE Act database and/or communicated to NICS; and whether the individually named Defendants are liable for, among other things, failing to properly train and supervise others in the proper and lawful administration of the SAFE Act database as set forth in Section 7.09 of the Mental Hygiene Law. *See* Dkt. No. 1. In the Article 78 proceeding, the only issue raised by Plaintiff was whether the December 2, 2020, decision of the SAFE Act Office to deny his application for a Certificate of Relief was an arbitrary and capricious application of state laws and regulations. No constitutional law issues were raised or decided in the Article 78. As such, Defendants have failed to meet the first prong

necessary for the application of collateral estoppel.  *See Abdelal v. Kelly*, 726 Fed. Appx. 8, 11 (2d Cir. 2018).

Accordingly, the Court denies this aspect of Defendants' motion to dismiss.

**D.     Statute of Limitations for 42 U.S.C. § 1983**

Defendants assert that Plaintiff's claims should be dismissed because they are time barred under the statute of limitations.  *See* Dkt. No. 12-5 at 8.  In their motion, Defendants' reference a September 11, 2019 letter from Dr. Brian Mazmanian.  *See id.* (citing Dkt. No. 12-2 at 34-35).  In that letter, Dr. Mazmanian indicates that he initially saw Plaintiff in May 2015 when a "red flag" prevented Plaintiff from obtaining a gun permit.  *See* Dkt. No. 12-2 at 34.  In the September 11, 2019 letter, Dr. Mazmanian indicates that Plaintiff went to him again on that date because "a similar question" recently came up when Plaintiff "went to but a rifle with his father and it became prohibited since he was on the NICS list[.]" *Id*.  Based on this evidence, Defendants contend that Plaintiff "knew his psychiatric admission was a barrier to attaining a gun permit no later than in 2015." Dkt. No. 12-5 at 11.  The Court disagrees.

The determination of when a statute of limitations began to run is generally a factual one. *See Bice v. Robb*, 324 Fed. Appx. 79, 81 (2d Cir. 2009).  Thus, a "motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, No. 10 Civ. 3576, 2010 WL 5116129, *1 (E.D.N.Y. Dec. 13, 2010) (citation omitted).  However, "where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

In Section 1983 actions, the applicable statute of limitations is the state's "general or residual statute for personal injury actions."  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.

2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations omitted). In New York, a three-year statute of limitations applies for personal injury actions and thus to Section 1983 actions. *See id.*; *see also* N.Y.C.P.L.R. § 214(5). Although state law provides the relevant limitations period, federal law determines when a Section 1983 action accrues, which is the time "when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted). Thus, in determining when a particular claim accrues, courts must focus on when a "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

For the statute of limitations defense to apply to the instant case, Plaintiff would have had to have known that he was listed in the NICS database prior to April 1, 2019. Defendants assert that Plaintiff knew or had reason to know that he was listed in the NICS database in 2015 based on his visit to a psychiatrist to "assist him with 'eligibility for a gun purchase.'" Dkt. No. 12-5 at 9. Plaintiff claims that he "had no reason know that Defendants ... maintained information about [him] in the SAFE Act mental health database and ... communicated to the federal government and other agencies that he was . . . prohibited from firearm possession[,] purchase, receipt, and ownership of firearms" before his attempt to purchase one in 2019. Dkt. No. 15 at 12. Plaintiff explains that since his application for a Massachusetts concealed carry pistol license in 2015 was not denied "after a criminal history and mental health background check by law enforcement," he had no reason to make inquiry into his status in the NICS database. *See id.* at 13. Plaintiff explains that the letter from his psychiatrist in 2015 was submitted at the request of the local Chief of Police in support of his concealed carry permit. The fact that Plaintiff's concealed carry permit was granted in 2015 and he did not try to purchase a firearm until 2019 requires the Court

15

to deny Defendants' motion on this ground. While Defendants may be able to establish that Plaintiff knew of his listing in the NCIS database prior to April 1, 2019, through discovery, the Court is unable to make that determination at the pleadings stage.

Accordingly, the Court denies this aspect of Defendants' motion to dismiss.

E.   **Eleventh Amendment and Personal Liability of Defendants**

Defendants further submits that Plaintiff's claims are barred by the Eleventh Amendment. *See* Dkt. No. 12-5 at 10. In response, Plaintiff claims that the complaint does not seek monetary damages against Defendants Sullivan and Rossado in their official capacities and, therefore, the Eleventh Amendment does not preclude his claims for damages. *See* Dkt. No. 15 at 22-23.

In the present matter, the complaint and Plaintiff's response make clear that he is only seeking damages against Defendants Sullivan and Rossado in their individual capacities and that these individuals are only sued in their official capacities insofar as Plaintiff is seeking declaratory and injunctive relief. *See* Dkt. No. 1 at 21-23. Since neither of these claims are barred by the Eleventh Amendment, this aspect of Defendants' motion is denied. *See Ex Parte Young*, 209 U.S. 123 (1908); *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

F.   **Personal Involvement**

Defendants also contend that Defendants Sullivan and Rossado must be dismissed because the complaint fails to allege that they were personally involved in the alleged unconstitutional conduct. *See* Dkt. No. 12-5 at 13-14.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged

16

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)) (other citations omitted). Thus, a plaintiff must plead "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates" by the Defendant. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit clarified that there is no special test for liability of supervisors, but that "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 616 (quoting *Iqbal*, 556 U.S. at 676).

For both named Defendants, Plaintiff makes several allegations that Defendants personally violated his constitutional rights. *See* Dkt. No. 1 at ¶¶ 76-78, 85-91, 93, 95, 102-112. First, Plaintiff alleges Defendant deprived him of due process rights in not informing him of being listed and reported to NICS. *See id.* at ¶¶ 76-78. Second, Plaintiff alleges that Defendants refused to remedy the denial of his right to purchase a firearm when he informed them of the perceived error of listing him in the SAFE Act database and reporting to the NICS database. *See id.* at ¶¶ 85-90. Additionally, Plaintiff alleges that due to their actions, including their failure to train and supervise their staff, Defendants continue to deprive Plaintiff of his right to own a firearm. *See id.* at ¶¶ 50, 95, 102-112.

Because Plaintiff makes such plausible allegations regarding Defendants' personal involvement in the deprivation of his constitutional rights, this aspect of Defendants' motion to dismiss is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 12) is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 9, 2023
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge