**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

D.B.,

　　　　　　　　　　　　　　Plaintiff,　　　　　1:22-CV-0282

　　　　v.　　　　　　　　　　　　　　　　　(MAD/PJE)


ANN MARIE T. SULLIVAN, M.D.,
Commissioner, Office of Mental Health,
In her Individual and Official Capacity, et al.,

　　　　　　　　　　　　　　Defendants.

---

**APPEARANCES:**　　　　　　　　　**OF COUNSEL:**

The Bellatoni Law Firm, PLLC　　　　AMY L. BELLATONI, ESQ.
2 Overhill Road, Ste. 400
Scarsdale, New York 10583
Attorneys for plaintiff

NYS Office of the Attorney General　　MARK J. DOLAN, ESQ.
The Capitol　　　　　　　　　　　　MELISSA A. LATONO, ESQ.
Albany, New York 12224
Attorneys for defendants

### REPORT-RECOMMENDATION & ORDER[1]

Presently before the Court is plaintiff D.B.'s motion to amend his complaint

pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a)(2).  *See* Dkt. No.

34.  Defendants Ann Marie T. Sullivan, M.D. and Rossana Rosado (collectively

"defendants") opposed.[2]  See Dkt. No. 37.  Familiarity with the procedural history, facts

---

[1] In general, motions to amend are nondispositive in nature.  *See, e.g., Smith v. Baugh*, No. 16-CV-906V(F), 2018 WL 1918283, at *1 n.1 (W.D.N.Y. Apr. 24, 2018) ("Pretrial rulings on motions to amend pursuant to Fed. R. Civ. P. 15 referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) ("§ 636(b)(1)(A)") are non-dispositive.").  Here, however, as the undersigned has recommended dismissal of two Doe defendants, styling this opinion as a Report-Recommendation & Order is appropriate.
[2] Defendants opposed except to the limited extent that plaintiff "seeks to withdraw claims and requests for relief." Dkt. No. 37-2 at 11.

and allegations underlying the complaint and this motion is presumed.  They will be repeated here only insofar as necessary to decide this motion.[3]  For the reasons that follow, it is recommended that the motion to amend be granted in part and denied in part.

## I. **Arguments**[4]

Plaintiff argues that an amended complaint is needed at this time due to defendants' delay in disclosing "the identities of the individuals who processed, reviewed, determined and rendered the final determination of Plaintiff's application to be removed from the New York State NICS reporting database, referred to in the proposed First Amended Complaint . . . as the 'Panel Members'"[5] who are "at least three (3) of the Does referenced in the initial Complaint."  Dkt. No. 34-1 at 3.  Plaintiff contends that he has, since commencing this action, sought to "obtain from the State" the names of the "panel members" or "individuals who processed, reviewed, determined, and rendered the final determination of plaintiff's application to be removed from the New York State NICS reporting database[.]"  *Id.* at 4.  Plaintiff's counsel was "able to independently discover the identity of two panel members through a complaint out of the Western District of New York and discovered a third panel member's identity from "counsel in this case" after "the State's public safety argument"[6] was "deflated."  *Id.*

---

[3]  For greater detail on the claims and procedural history of this case, reference is made to the complaint and defendants' first motion to dismiss.  *See* Dkt. Nos. 1, 12.

[4]  The Court's citation to the parties' filings is to the pagination generated by the Court's electronic filing system, CM/ECF, located at the header of each page, not to the documents' original pagination.

[5]  The panel members, proposed as new defendants, are Dr. Li-Wen Grace Lee, Carmen Barber, and Tony Trahan.

[6]  Plaintiff notes that the state refused to identify panel members with the same logic in a "similar matter pending in this District, *Richey v. Sullivan*, 1:23-CV-00344-AMN-DJS."  Dkt. No. 34-1 at 3 ¶8.

Plaintiff further provides that his proposed amended complaint eliminates personal capacity claims against defendant Sullivan, which he argues was necessitated after learning during panel member Dr. Lee's April 9, 2024, non-party deposition that Sullivan "is not personally involved in the review and determination of applications for Certificates of Relief."  Dkt. No. 34-3 at 5.  Plaintiff further states that the proposed amended complaint eliminates (1) the Fourth Amendment failure to train/supervise claim and the Fourteenth Amendment post-deprivation claim; and (2) defendants Division of Criminal Justice Services and Rossana Rosado, Division of Criminal Justice Services Commissioner.[7]  *See id.*  Lastly, plaintiff provides that the proposed amended complaint "narrows the language relating to the claims and declaratory relief and adds language challenging New York State Mental Hygiene law 7.09(j)."  *Id.*

Plaintiff argues that his delay in seeking to amend was not out of bad faith or dilatory motive but due to the "State's refusal to provide any information regarding the Panel Members [which] foreclosed Plaintiff's ability to proceed any further with discovery, including amending the Complaint to identify the Doe defendants."  Dkt. No. 34-3 at 6.[8]  Plaintiff further notes that he only recently learned of Sullivan's lack of personal involvement, and it was Dr. Lee's recent deposition that prompted the removal of DJCS and Rosado as defendants and the addition of "allegations challenging MHL

---

[7]  Although plaintiff states that the original complaint named the Division of Criminal Justice Services as a defendant, that agency was not named in the caption or in the list of "parties" in the original complaint. *See* Dkt. No. 1.

[8]  Defendants do not address plaintiff's allegations regarding defendants' allegedly improper delay/motive connected with the identification of the panel members.

7.09(j) as unconstitutionally overbroad." *Id.* at 7. Further, he argues that defendants will not suffer prejudice from the amendments. *See id.* at 6.

Defendants argue that plaintiff's motion to file an amended complaint, insofar as he seeks to identify and add claims against defendants Dr. Li-Wen Grace Lee, Carmen Barber, and Tony Traham, is futile because "the Panel Members are entitled to both quasi-judicial and qualified immunity." Dkt. No. 37-2. More specifically, they assert that the panel members "performed functions closely associated with the judicial process," which the Second Circuit has held entitles "government officials" to absolute immunity. *Id.* at 12. They argue that the panel members' duties are comparable to similar "quasi-judicial" roles that have been found, in this Circuit and others, to be entitled to absolute immunity. *Id.* at 12-13. Defendants further contend that the "particular acts or responsibilities" of the panel members – they "thoughtfully and carefully reviewed significant evidence including a DCJS fingerprint response summary, medical records from four healthcare providers, a psychiatric summary submitted by Plaintiff, and six letters of reference" – are functions entitled to quasi-judicial immunity. *Id.* at 13. Defendants contend that, since the panel members are entitled to quasi-judicial immunity and plaintiff "fails to allege any facts that suggest that the Panel Member defendants acted in the absence of their jurisdiction," the proposed claims are futile. *See id.* at 15.

In addition, defendants argue that the proposed defendants are protected by qualified immunity. *See* Dkt. No. 37-2 at 16. They contend that the proposed amended complaint "fails to support a violation of any clearly established right." *Id.* at 19. Pointing out that there "is no established United States Supreme Court or Second

Circuit law establishing that the denial of a certificate of relief from disabilities on grounds related to the likelihood of dangerousness violates the Second Amendment," they argue that "the governing qualified immunity standard and the Second Circuit test later adopted in [*New York State Rifle & Pistol Ass'n, Inc. v.*] *Bruen*[, 597 U.S. 1 (2022),] require that the Court must narrowly define the course of conduct at issue[.]" *Id.* at 17-18.  Next, defendants opine that *Bruen*, among other things, "did not displace the body of law on judicial immunity because it "did not address judicial immunity or contradict the cases establishing 'whether a particular proceeding before another tribunal was truly judicial.'" Dkt. No. 37-2 at 15 (citing *Bruen*, 597 U.S. at 19 n.4).  Defendants contend that the relevant question for qualified immunity is "whether binding precedent established that any official in the Panel Members' shoes would have understood denying the Plaintiff's application to be a Second Amendment violation."  *Id.* at 17.

Finally, defendants argue that plaintiff's "due process claims also fail because he had adequate remedies available to him, and because any such claim accrued outside the three-year § 1983 limitations period."  Dkt. No. 37-2 at 6.  They assert that the motion should be denied "except insofar as Plaintiff seeks to withdraw claims and requests for relief."  *Id.*  They also contend that plaintiff's claims are time barred as the action was commenced on March 23, 2022, but plaintiff "concedes that he was admitted to Samaritan Hospital in 2014, and that the alleged lack of notice occurred 'at or near the time of the event.'"  *Id.* at 19.  Defendants further assert that plaintiff "does not allege the Panel Members' personal involvement[9] in the alleged lack of notice" and that the

---

[9]   In their motion to dismiss, defendants made similar personal involvement arguments with respect to Sullivan and Rosado.  The Court rejected those arguments with respect to those defendants, contending that in the original complaint, "Plaintiff makes several allegations that Defendants personally violated his constitutional rights" by alleging that "Defendant deprived him of due process rights in not informing him

proposed Does 1-2 "are no longer appropriate at this juncture since they are not identified." *Id.* at 19.

## II. **Legal Standards**

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a)(2),

leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.

*Yennard v. Herkimer BOCES*, 241 F. Supp. 3d 346, 361 (N.D.N.Y. 2017), *amended on other grounds and superseded by* 2017 WL 11317859 (N.D.N.Y. Mar. 27, 2017) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

However, "[t]he Second Circuit has held that Rule 16's more exacting 'good cause' standard is properly applied in instances where a motion to amend is filed after the expiration of a court's scheduling order deadline for the amendment of the pleadings." *BCA, LLC v. Ulster County*, No. 1:08-CV-149 (GLS/RFT), 2009 WL 10721011, at *1 (N.D.N.Y. May 6, 2009) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007)). Further, "[a] plaintiff may establish 'good cause' if the proposed amendment 'rests on information that was not available prior to the deadline to amend the pleadings.'" *Kotler v. Bosco*, No. 9:17-CV-0394 (GTS/ML), 2019 WL 12291097, at

---

of being listed and reported to NICS"; that "Defendants refused to remedy the denial of his right to purchase a firearm when he informed them of the perceived error of listing him in the SAFE Act database and reporting to the NICS database; and that "due to their actions . . . Defendants continue to deprive Plaintiff of his right to own a firearm." Dkt. No. 18 at 17.

*3 (N.D.N.Y. Nov. 4, 2019) (quoting *Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010)).

In determining whether good cause exists, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)).  Yet, "[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including . . . whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  Id.  "[T]he absence of prejudice to the non-moving party "is not alone sufficient to satisfy the good cause requirement of Rule 16(b).'" *BCA, LLC v. Ulster Cnty.*, No. 1:08-CV-149 (GLS/RFT), 2009 WL 10721011, at *2 (N.D.N.Y. May 6, 2009) (quoting *Intn'l Media Films, Inc. v. Lucas Entm't, Inc.*, No. 7 Civ. 1178, 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008)).  "[E]ven if a court finds good cause for plaintiff's delay, it may still deny a motion to amend a complaint on the basis of prejudice to the defendant or futility." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citation omitted).

"If the moving party is able to establish good cause, only then should the Court 'consider whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on the Rule 15(a) standards that otherwise govern motions to amend.'" *Kotler*, 2019 WL 12291097, at *3 (N.D.N.Y. Nov. 4, 2019) (quoting *Parker*, 204 F.3d at 340).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d

104, 110 (2d Cir. 2001) (observing that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss"). Ultimately, the decision whether to grant leave to amend is one within the Court's discretion. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010) ("Rule 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading to add a party or a claim").[10]

In reviewing a motion to amend, the Court may consider, in addition to the complaint, documents that the plaintiff attached to the pleadings, documents referenced within the complaint, "documents . . . in plaintiff's possession or of which plaintiffs had

---

[10]   As this Court not long ago highlighted,

Recently, the Second Circuit reaffirmed its strong preference for providing plaintiffs with an opportunity to amend deficiencies, particularly when a plaintiff has not had the benefit of a district court's ruling on the issues relevant to amendment:

"Federal Rule of Civil Procedure 15(a)(2) states that court[s] should freely give leave [to amend] when justice so requires. We have upheld Rule 15(a)(2)'s liberal standard as consistent with our strong preference for resolving disputes on the merits. We have been particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue, reasoning that [w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies. However, denial of leave to amend is proper if amendment would be futile. In particular, [a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."

*APP Grp. Inc. v. Rudsak USA Inc.,* No. 22-1965, 2024 WL 89120, *4-5 (2d Cir. Jan. 9, 2024) (quoting *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019)); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (finding it improper to provide plaintiffs with "a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead").

*O'Brien v. City of Syracuse*, No. 5:22-CV-948 (MAD/TWD), 2024 WL 4252052, at *3 (N.D.N.Y. Sept. 20, 2024).

knowledge and relied on in bringing the action," and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).[11]

## III. **Discussion**

As a threshold issue, plaintiff seeks to amend his complaint after the expiration of the deadline for the amendment of pleadings. See Dkt. No. 26. Thus, Rule 16 applies, requiring plaintiff to demonstrate good cause for the delay. Plaintiff contends that he was unable to learn the information needed to amend before learning the identities of, and thereafter taking depositions of, the panel members.[12] Defendants do not contest this argument. Accepting as true plaintiff's arguments that he was unable, despite due

---

[11] When it comes to adding a party to a complaint after the expiration of the scheduling order's deadline for joinder of parties,

> just as with a Rule 15(a) motion to add a claim, if a Rule 21 motion to add a party after the scheduling deadline did not have to meet the good cause requirement of Rule 16(b), the scheduling order would be rendered meaningless. For this reason, numerous courts have held that Rule 16(b) is applicable to a motion to add a party. *See, e.g., Sosa*, 133 F.3d at 1419; *Johnson v. Mammoth Recreations. Inc.*, 975 F.2d 604, 608 (9th Cir.1992); *Deal v. Yurack*, No. 9:04-CV-0072 (LEK/DEP), 2007 WL 2789615, at *6 (N.D.N.Y. Sept. 24, 2007); *Datastrip Int'l Ltd. v. Intacta Techs., Inc.*, 253 F.Supp.2d 1308, 1317 (N.D.Ga. 2003) ("Courts evaluating motions to amend [to add a party] must apply the good cause rubric of Rule 16 before considering whether amendments are proper under Rule 15 or 21.").

*Int'l Media Films, Inc.*, 2008 WL 781823, at *3.

[12] Plaintiff states that he was able to discover the identity of one of the panel members "during the time period" that plaintiff sought Court intervention for discovery disputes. *See* Dkt. No. 34-1 at 3. Plaintiff filed his letter seeking assistance on March 5, 2024. *See* Dkt. No. 30. In this letter, plaintiff's counsel provides that she was able to identify two of three panel members "days before" a February 13, 2024, conference in another case with similar issues, as those defendants were named in a case out of the Western District of New York, but needed assistance with the identity of the third panel member. Dkt. No. 30 at 1-2. Plaintiff notes that plaintiff's counsel in the Western District case identified the third panel member on March 12, 2024. The Court held a conference on March 14, 2024. *See* Text Min. Entry dated Mar. 14, 2024. Pursuant to the schedule set at that conference, plaintiff filed this motion on May 17, 2024. *Cf. Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (summary order) (determining that the district court "acted well within its discretion" in concluding that the plaintiff's three-month delay in seeking to amend after learning information that formed the basis of the proposed amendment failed to satisfy the due diligence requirement under Rule 16(b)).

diligence, to identify the panel members' identities, the undersigned determines that plaintiff has demonstrated good cause for the delay as it relates to the identification of the panel members.

However, the Court finds otherwise with respect to another proposed amendment. Plaintiff's motion to amend provides that the proposed amended complaint "adds language challenging New York State Mental Hygiene Law 7.09(j)." Dkt. No. 34-3 at 5. Specifically, the proposed amended complaint states, "Plaintiff seeks a declaration from this Court that MHL 7.09(j)(1) is unconstitutionally overbroad," that § 7.09(j) is "overbroad and violates the Second and Fourteenth Amendments," and that § 7.09(j)(1) "is overbroad in that, by generally referring to 'Article 9' it authorizes reporting any and all individuals who are 'involuntarily' committed pursuant to any provision of Article 9, which encompasses individuals only 'alleged' to have mental illness under MHL 9.39." Dkt. No. 34-2 at 9-10, 24. The surrounding newly-proposed language also states that "MHL 7.09(j)(1) implicates, and violates, the Second and Fourteenth Amendments[,]" and asserts that "there is no historical tradition in this Nation of barring the possession of Arms for self-defense purposes, including firearms, of individuals who are merely alleged to have a mental illness." Id. at 10.

Plaintiff's motion to amend addresses this section 7.09(j) overbreadth argument in a singular sentence: "Based on Dr. Lee's deposition, the [proposed amended complaint] also incorporates allegations challenging MHL 7.09(j) as unconstitutionally overbroad." Dkt. No. 34-3. Defendants do not explicitly object to the addition of the section 7.09(j) argument. Arguably, their opposition could fall under defendants'

general argument that plaintiff's motion should be denied except to the limited extent it seeks to withdraw claims or requests for relief.  *See* Dkt. No. 37-2 at 20.

The undersigned concludes that plaintiff fails to demonstrate good cause for his delay in seeking to include his argument that MHL § 7.09(j) is unconstitutionally overbroad.[13]  He has fully failed to demonstrate due diligence with respect to this claim. His conclusory, one-line statement that he was unaware of this claim until deposing Dr. Lee falls short on its face.  *See* Dkt. No. 34-3.  Plaintiff does not address what information in Dr. Lee's testimony made plaintiff newly aware of his desire or ability to set forth a claim that MHL § 7.09(j) is unconstitutionally overbroad or why reasonable efforts could not been made to lead him to the discovery of relevant information such that he could have sought to amend to add this claim sooner.  As plaintiff has not established good cause for his delay with respect to this claim, the Court need not reach prejudice to defendant or futility.  *See, e.g.,* Kotler, 2019 WL 12291097, at *3 (quoting *Parker*, 204 F.3d at 340).  Accordingly, insofar as plaintiff seeks to amend as to add a claim that Mental Hygiene Law § 7.09(j) is unconstitutionally overbroad, the motion is denied.

The Court next assess whether such amendments, other than those connected to the MHL § 7.09(j) claim, are futile.[14]

## B.  **Statute of Limitations**

The Court addresses defendants' argument that plaintiff's due process claims are time barred.  *See* Dkt. No. 37-2 at 19.  Plaintiff was hospitalized involuntarily on August

---

[13]   Defendants note that plaintiff has not "filed a notice of constitutional question under Federal Rule of Civil Procedure 5.1(a)(1)(A)."  Dkt. No. 37.2 at 7.
[14]   Defendants do not argue that the amendments would be unduly prejudicial nor does it appear to the Court that there would exist significant prejudice; thus, the Court addresses the futility arguments only.

24, 2014.  Plaintiff's hospital admission was in 2014; his denial of a certificate of relief from disabilities related to firearms is dated December 2, 2020; and plaintiff commenced this action on March 23, 2022.

In New York, the statute of limitations for section 1983 claims is three years.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). "While state law determines the statute of limitations, '[f]ederal law determines when a section 1983 cause of action accrues, and we have ruled that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see also Pauk v. Bd. of Trustees of City Univ. of New York*, 654 F.2d 856, 859 (2d Cir. 1981) (stating that federal claims accrue when the plaintiff "knows or has reason to know" of the injury that is the basis for the action).

Plaintiff does not address timeliness in the proposed amended complaint, and defendants' argument on this point is one short paragraph in length.  *See* Dkt. No. 37-2 at 19.  Defendants contend that plaintiff concedes that the relevant period of notice was "at or near the time of the event," which was plaintiff's admission to the hospital in 2014, suggesting that all of plaintiff's claims began to accrue in 2014.  Dkt. No. 37-2 at 19 (citing Dkt. No. 34-2 at ¶¶ 20, 84).  Thus, defendants argue that claims against all defendants are time barred.  *See* Dkt. No. 37-2 (citing Dkt. No. 34-2 at 20-22, 107-09).

Plaintiff suggests that Does 1-2 "knew at or near the time of the event," defined as the hospitalization, "that Plaintiff's personal identifying information had become populated into the NYS NCIS reporting database[,]" but failed to provide plaintiff with "[n]otice that he was now listed in the NYS reporting database, that he would be

reported to NICS as a prohibited person, and that such inclusion terminated Plaintiff's ability to engage in conduct protected by the Second Amendment." Dkt. No. 34-2 at 5 ¶20.   Plaintiff's proposed amended complaint does not make fully clear when plaintiff is alleging he learned about his being added to the NICS list.  He provides that "[y]ears after his hospitalization at Samaritan Hospital, Plaintiff learned that New York State falsely informed the federal government, including NICS, that he had been 'involuntarily committed' to a mental health facility in 2014, referring to his admission to Samaritan Hospital." Dkt. No. 34-2 at 18¶ 93.  However, plaintiff suggests that he did not learn about being on the list until 2019, when his attempt to purchase a firearm was denied.

By referring to defendants collectively, plaintiff also appears to contend, as he did in the original complaint, that all defendants, including the panel members, violated his civil rights by failing to provide notice or opportunity to be heard "when his personal identifying information was entered into the State's mental health database" or that "they were communicating to, inter alia, NICS that he was a person prohibited from purchasing, possessing, receiving, and transferring firearms by reason of an involuntary commitment to a mental health facility."  Dkt. No. 34-2 at 5 ¶170-109.

In their motion to dismiss, defendants presented a similar argument to the one they now raise in their opposition.  In the motion to dismiss, defendants argued that plaintiff "knew or had reason to know that he was listed in the NICS database in 2015 based on his visit to a psychiatrist to 'assist him with 'eligibility for a gun purchase.'" Dkt. No. 18 at 15 (quoting Dkt. No. 12-5 at 9).  By contrast, plaintiff argued in opposition to the motion to dismiss that he was unaware of his placement on the NICS database

until he attempted to purchase a gun in 2019. *See id.* In denying defendants' motion to dismiss, the Court concluded:

> [t]he fact that Plaintiff's concealed carry permit was granted in 2015 and he did not try to purchase a firearm until 2019 requires the Court to deny Defendants' motion on this ground. While Defendants may be able to establish that Plaintiff knew of his listing in the NCIS database prior to April 1, 2019, through discovery, the Court is unable to make that determination at the pleadings stage.

Dkt. No. 28 at 15-16.

Since denying the motion to dismiss, defendants present no new information to the Court that would warrant the denial of the motion to amend on statute of limitations grounds. As it is not obvious from the face of the complaint that no further factual record needs to be developed for the Court to assess the statute of limitations defense, including determining when the claims accrued, the Court declines to deny the motion to amend on this ground. *See, e.g., Stillman v. De Vos*, No. 23 CIV. 7802 (JPC), 2024 WL 3797071, at *1 (S.D.N.Y. Aug. 13, 2024) ("[A] statute of limitations dismissal at the motion to dismiss stage is appropriate where the complaint's untimeliness is apparent on its face." *Griffin v. Carnes*, 72 F.4th 16, 21 (2d Cir. 2023). . . . . Dismissal on this basis is similarly not warranted unless the defense "is clear on the face of the complaint." *Id.*[]); *see also Concepcion v. Green*, No. 3:20-CV-182 (SVN), 2021 WL 5988613, at *8 (D. Ct. Dec. 17, 2021) (allowing Eighth Amendment claim to proceed "for further factual development of the record" when it was unclear from the face of the complaint when the claim accrued). Accordingly, defendants have failed to

demonstrate, at this time, that the potential claims would be clearly barred by the statute of limitations.[15]

### B.  Defendant Does 1-2

Defendants contend that claims against Does 1-2 "are no longer appropriate at this juncture since they are not identified."  Dkt. No. 37-2 at 19.[16]  Thus, defendants appear to argue that the motion to amend should be denied insofar as it proceeds with claims against Does 1-2 and these defendants should be terminated.

Plaintiff's original complaint names John Does 1-5 and Jane Does 1-5 and describes them as "individuals who personally and directly implemented policies and procedures described herein resulting in Plaintiff's personal identifying information being improperly maintained in the state mental health database for firearms reporting purposes and/or improperly communicated to other federal and state agencies."  Dkt. No. 34-1 at 2 (quoting Dkt. No. 1 at ¶38); *see also* dkt. no. 34-2 at 4 ("The Panel Members are at least three (3) of the Does referenced in the Complaint.") (citing Dkt. No. 34-1 at ¶7).  Plaintiff is seeking to amend to identify Does 3-5 as the panel members, whereas Does 1-2 remain unidentified.  The proposed amended complaint describes Does 1-2 as "employees or agents" of OMH who "have personal knowledge and information concerning individuals who are listed in the NYS NICS reporting

---

[15] The undersigned does not reach whether plaintiff could overcome such an argument on a fully-briefed and properly-filed dispositive motion nor is this recommendation intended to have impact on any potential future statute of limitations claims.

[16] Defendants cite *Coward v. Town and Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009).  In *Coward*, the Court noted that five years had passed since the plaintiff had named the Doe defendants and during that time, the plaintiff had "ample opportunity" to request discovery that may have permitted him to identify the Doe defendants.  665 F. Supp. 2d at 301.  The Court concluded that the plaintiff's arguments in response to a motion for summary judgment did not "excuse" his failure to identify the Doe defendants because it "does not explain what efforts Plaintiff has made to obtain the identities of the John Does or why his efforts were unsuccessful."  *Id.* at 303.  Thus, the Court dismissed the claims against the Doe defendants.

database." Dkt. No. 34-2 at 5 ¶19.  Plaintiff further provides that Does 1-2 "knew at or

near the time of the event, that Plaintiff's personal identifying information had become

populated in the NYS NICS reporting database" but "failed to provide Plaintiff with

Notice that he was now listed in the NYS reporting database, that he would be reported

to NICS as a prohibited person, and that such inclusion terminated Plaintiff's ability to

engage in conduct protected by the Second Amendment." *Id.* ¶ 21.  He also contends

that Does 1-2 did not provide plaintiff with an "opportunity to be heard concerning the

loss of constitutional rights that are presumptively protected by the Second

Amendment." *Id.* at 6 ¶22.  Plaintiff asserts that Does 1-2, along with defendants

Sullivan, Lee, Barber, and Trahan, "were responsible for, and directly created, oversaw,

and implemented policies and procedures for including, and maintaining, Plaintiff's

information in the NYS NICS reporting database," "personally and directly implemented

the policies and procedures described herein that resulted in the violation of Plaintiff's

constitutional rights as protected by the Second and Fourteenth Amendments," and

"personally and directly implemented the policies and procedures herein resulting in

Plaintiff's personal identifying information being (i) improperly maintained in the state

mental health database for firearms reporting purposes and/or (ii) improperly

cmmunicated [sic] to other federal and state agencies." *Id.* ¶¶ 24-26.  Plaintiff contends

that defendants acted intentionally or with deliberate indifference. *See id.* ¶ 23.

Plaintiff has not provided to the Court the efforts, if any, he made to identify Does

1-2 through discovery.  He does not contend, as he did with Does 3-5 – the panel

members – that defendants' conduct was the cause of the delay in his ability to identify

Does 1-2.  The discovery deadline was March 25, 2024, and plaintiff notified the Court

about the discovery difficulties on March 5, 2024. *See* Dkt. No. 30. His request for

Court assistance was specific to the identity of the then-identified third panel member.

*See id.* It is unclear to the Court what, if any, efforts were made between the

commencement of this action and March 2024 to identify Does 1-2. Despite having

ample time and opportunity to conduct discovery to identify Does 1-2, plaintiff has failed

to demonstrate that he has taken such efforts. Plaintiff has not shown good cause for

relief from this failure for an extension of time to do so. Plaintiff has run afoul of Rule

4(m) and this Court's March 24, 2022, text notice.[17] For these reasons, it is

recommended that Does 1-2 be dismissed from this action without prejudice.

### C. **Immunities**

#### 1. **Quasi-Judicial Immunity**

Defendants argue that "the proposed new defendants, Dr. Li-Wen Grace Lee,

Carmen Barber, and Tony Trahan are protected by absolute quasi-judicial immunity."

Dkt. No. 37-2.

> "[Absolute] immunity also extends to administrative officials performing
> functions closely associated with the judicial process because the role of
> the hearing examiner or administrative law judge . . . is 'functionally
> comparable' to that of a judge." *Montero v. Travis*, 171 F.3d 757, 760 (2d
> Cir. 1999) (collecting cases); *see also Durant v. N.Y. City Housing Auth.*,
> 12-cv-0937, 2012 WL 928343, at *2, 2012 U.S. Dist. LEXIS 36919, at *4
> (E.D.N.Y. Mar. 19, 2012) ("This absolute judicial immunity has been
> further applied to non-federal administrative hearing officers."). "[A]bsolute
> immunity is of a 'rare and exceptional character,'" *City of Providence v.
> Bats Glob. Mkts., Inc.*, 878 F.3d 36, 46 (2d Cir. 2017) (quoting *Barrett v.
> United States*, 798 F.2d 565, 571 (2d Cir. 1986)), and "courts must
> examine the invocation of absolute immunity on a case-by-case basis," *In
> re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (citing *DL
> Capital Grp. v. Nasdaq Stock Mkt. Inc.*, 409 F.3d 93, 97 (2d Cir. 2005)). A
> court "must conduct 'some factual inquiry' to determine if the duties of the

---

[17] At the commencement of this proceeding, the Court directed plaintiff to take "reasonable steps to
ascertain" the identity of the Doe defendants, and advised plaintiff that he may take steps to seek to
amend once those defendants are identified. <u>See</u> Text Notice dated Mar. 24, 2022.

defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." *Victory v. Pataki*, 814 F.3d 47, 66 (2d Cir. 2016) (quoting *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999)). "[T]he party asserting immunity bears the burden of demonstrating its entitlement to it." *Id.* (citing *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 104 (2d Cir. 2001)).

*Cassidy v. Madoff*, No. 8:18-CV-00394 (BKS/DJS), 2020 WL 554529, at *7 (N.D.N.Y. Feb. 4, 2020). "'Under the doctrine of quasi-judicial immunity, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature.' Accordingly, quasi-judicial immunity bars plaintiff's monetary claims . . . . However, neither judicial immunity nor quasi-judicial immunity bars a claim for prospective injunctive relief." *Reddy v. Catone*, No. 5:13-CV-00707 (MAD), 2015 WL 11023213, at *20 (N.D.N.Y. Mar. 31, 2015), *aff'd*, 630 F. App'x 120 (2d Cir. 2015) (quoting *Truong v. McGoldrick*, No. 06 Civ. 1430, 2006 WL 1788960, at *4 (S.D.N.Y. June 27, 2006) (additional citation omitted). "Certain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 485).

Defendants assert that, because the panel members are entitled to quasi-judicial immunity, the motion, insofar as it seeks to add/identify them as defendants, is futile. *See generally* Dkt. No. 37-2.

To determine whether an official's actions served a judicial function, courts consider the degree to which the conduct was subject to procedural safeguards, such as whether the context in which it performed "was adversarial in nature[,] . . . conducted by a judicial officer who rendered the final decision[,] and . . . subject to judicial review." *Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (alteration and internal quotation marks omitted).

*Baker v. Spinner*, No. 8:18-CV-00950 (BKS/DJS), 2019 WL 3430918, at *4 (N.D.N.Y. July 30, 2019), *aff'd*, 826 F. App'x 105 (2d Cir. 2020); *see Sassower v. Mangano*, 927 F.Supp. 113, 120 (S.D.N.Y.1996) ("Under the doctrine of quasi -judicial immunity, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature.").

Where an official's tasks are purely investigative or administrative, they have been held not to be entitled to quasi-judicial immunity.  *See Lewis v. Essex Cnty., New York*, No. 8:24-CV-100 (MAD/CFH), 2024 WL 4441730, at *4 (N.D.N.Y. Oct. 8, 2024) (citing *Atherton v. Dist. of Columbia Off. of the Mayor*, 567 F.3d 672, 684 (D.C. Cir. 2009) (holding that a "juror official" whose tasks were as follows was not entitled to quasi-judicial immunity: "administrative tasks, such as determining the number of jurors needed . . . each day, managing the computer systems and equipment for the Juror's Office, and overseeing juror orientation and the administration of oath for the jurors[.]"); *Neroni v. Zayas*, No. 3:13-CV-0127 LEK/DEP, 2014 WL 1311560, at *9 (N.D.N.Y. Mar. 31, 2014) (denying the defense of quasi-judicial immunity to an official involved in investigating the plaintiff's disbarment, concluding that, the "[p]laintiff's claims based on the post-disbarment investigations and the denial of access to the disciplinary file do not concern acts of a judicial nature."); *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 134 (S.D.N.Y. 2002) ("Absolute quasi-judicial immunity has been upheld for referees and committees appointed by state courts to conduct attorney disciplinary hearings."); *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 554, n.25 (E.D.N.Y. 2012) ("Defendant Nelson was . . . the independent hearing officer who conducted the Superintendent's hearing for the infant

plaintiffs in this case. Nelson presided over the disciplinary hearings, heard arguments and testimony, and issued a decision in the form of a recommendation to the Superintendent. Having acted in this quasi-judicial role, Nelson is entitled to quasi-judicial immunity from plaintiffs' federal claims against him in his individual capacity.").

Here, defendants ask the Court to take "judicial notice[18] of the regulations which establish the certificate of relief from disabilities process at 14 N.Y.C.R.R. 543.1 to understand the quasi-judicial role OMH [Office of Mental Health] officials play[,]" to which this Court agrees. Dkt. No. 37-2 at 13 (citing *Dawkins v. Bondi Educ. Ctr.*, 164 F. Supp.3d 518, 526 n.2 (S.D.N.Y. 2016)).  Pursuant to these regulations, defendants argue, panel members "must make a determination of whether the person's record and reputation are such that the person will not be likely to act in a manner dangerous to public safety and where granting the relief would not be contrary to the public interest." Id. (citing 14 N.Y.C.R.R. 543.1(d)).  Defendants assert that "[t]he officials adjudicating certificate of relief from firearm disability applications are applying this legal standard to the facts of each case, a fundamentally adjudicatory function."  Id. at 14.  Thus, they argue that the role of the panel members should be entitled to quasi-judicial immunity because these individuals "thoughtfully and carefully reviewed significant evidence including a DCJS fingerprint response summary, medical records from four healthcare providers, a psychiatric summary submitted by Plaintiff, and six letters of reference."  Id. at 13.  Accordingly, defendants liken this role to "a fundamentally adjudicatory function."  Id.

---

[18]  For purposes of this motion, the undersigned considers these regulations as incorporated by reference in the proposed amended complaint. *See* Dkt. No. 34-2. Further, as defendants cite, "courts may take judicial notice of the rules and regulations of an administrative agency." *United States v. Knauer*, 635 F.Supp.2d 203, 206 n.2 (E.D.N.Y. 2009).

The undersigned has located no case directly on point that assesses whether individuals who make the determination whether an individual is entitled to a certificate of relief from disabilities as it relates to firearms are entitled to quasi-judicial immunity.[19] Indeed, there also appears to be a dearth of cases reviewing closely-comparable roles. Defendants proffer a variety of cases, both from within and outside of this Circuit, reviewing roles that they suggest are comparable and have been held entitled to judicial or quasi-judicial immunity.  *See* Dkt. No. 37-2 at 12 (citing cases).   Defendants highlight a string of cases holding that, for example, "an official who renders a decision related to firearm licensing is immune to suit under the doctrine of judicial immunity," Dkt. No. 37-2 at 12 (citing *Kellogg v. Nichols*, No. 1:23-CV-658, 2023 WL 8046892, at *2-3[20] (N.D.N.Y. Nov. 21, 2023) and others), as are board of pharmacy members who make determinations to issue/renew/suspend pharmacy licenses, *Meyer v. Backus*, No. 2:06-cv-229, 2007 WL 2908307, at *5-6 (D. Vt. Oct. 2, 2007); *Horwitz v. State Bd. Of Med. Examiners of State of Colo*., 822 F.2d 1508, 1515 (10th Cir. 1987) (holding medical board members serving in an adjudicative role held to be entitled to quasi-judicial immunity).  *Id.* at 12-13.

---

[19]   Although these arguments were raised in cases involving plaintiff's counsel in other districts in this Circuit, and noted in her motion to amend, it appears that, at the time of the writing of this Report-Recommendation & Order, these issues/dispositive motions have not yet been decided in those cases. *See* Dkt. No. 24-1 at 3 (citing *Richey v. Sullivan*, 1:23-CV-00344 (AMN/DJS) (N.D.N.Y), *Giannavola v. Lee*, 6:24-CV-06096 FPG (W.D.N.Y.).

[20] *Kellogg* involved judges who ruled on applications for New York State firearm licenses, and the Court concluded that the defendant judge was "acting in his judicial capacity when ruling on plaintiffs' applications for firearm licenses.  As a statutory licensing officer for plaintiffs' county of residence, defendant was tasked with reviewing plaintiffs' applications and deciding whether to grant or deny them. In ruling on plaintiff's applications, defendant directly addressed the applications, referred to the relevant requirements of law, and decided the merits of the application."  Thus, the Court concluded that the rulings "were judicial decisions thereby entitling him to judicial immunity."  703 F. Supp. 2d at 372-73.

The undersigned further considers the fact that the panel members' review of a certificate of relief from disabilities is not adversarial in nature.  *Cf. O'Connor v. NYC Housing Auth.*, No. 08-CV-3623 (CBA)(LB), 2010 WL 1741369, at *8 (E.D.N.Y. Mar. 24, 2010) (holding that New York City Housing Authority hearing officer is entitled to absolute immunity under the doctrine of quasi-judicial immunity because proceedings were adversarial in nature); *see also B.D.S. v. Southhold Union Free Sch. Dist.*, No. 08-CV-1319 (SJF)(WDW), 2009 WL 1875942, at *29 (E.D.N.Y. June 24, 2009) (holding the State Department of Education hearing officer's role is "functionally comparable to that of a judge" in part because the officer reviews administrative appeals and renders an independent decision); *Bloom v. NYS Comm'n of Health*, 573 F. Supp. 2d 732, 739 (E.D.N.Y. 2004) (in holding administrative law judge presiding over a professional medical conduct bureau is entitled to absolute immunity, the court noted the adversarial nature of the proceedings, and concluded that judicial immunity was needed to protect the administrative law judge "from the intimidation of a lawsuit by a losing party.").

The undersigned additionally notes that there is no internal appeals process;[21] however, denials of certificate for relief are subject to judicial review "in accordance with applicable State law" through an Article 78 proceeding.[22]  *See Houston v. Nassau Cnty. Police Dep't*, No. 20-CV-5253 (KAM/AKT), 2020 WL 7643132, at *3 (E.D.N.Y. Dec. 23, 2020) ("'New York Mental Hygiene Law § 7.09 sets forth a process for removing a name from the NICS list by seeking a certificate of relief from disabilities, which is based on a determination as to whether the "person's record and reputation are such that such

---

[21]  *See Phelps v. Bosco*, 1:13-CV-1510 (GTS/CFH), 2017 WL 437407, at *24 (N.D.N.Y. Feb. 1, 2017) ("There is no appeals process at OMH."), *affirmed* 711 F. App'x 63 (2d Cir. 2018) (summary order).
[22]  *See* Dkt. No. at at 1-2 (noting that plaintiff has pursued use of Article 78 proceedings relating to the denial of a certificate of relief from disabilities related to firearms).

person will not be likely to act in a manner dangerous to public safety and where the granting of the relief would not be contrary to public safety.'") (citing N.Y. Mental Hyg. Law § 7.09; N.Y. Comp. R. & Regs. § 543.5(2)-(6); N.Y. Mental Hyg. Law §§ 7.09(2), 9.09(j)(2); *Phelps v. Bosco*, No. 13-cv-1510, 2017 WL 437407, at *17 (N.D.N.Y. Feb. 1, 2017")).  Further, an aggrieved individual can resubmit a renewed request for a certificate of relief from disabilities related to firearms one year after the denial of a prior request.

The undersigned has attempted a "factual inquiry" to determine whether the panel members' duties were closer to administrative[23] or adjudicative in nature. *Victory*, 814 F.3d at 66.  In making this assessment, the undersigned reviews the only guidance before it: the regulations setting forth the application process and the panel members' responsibilities.  As part of the application seeking a certificate of relief from disabilities relating to firearms, applicants must complete a form that asks a variety of questions under the penalty of perjury, including, among other questions, whether the applicant: has addictions to any controlled substances, has been adjudicated as having a mental disability to committed to a mental institution, or is subject to certain restraining orders." 14 NYCRR 543.5(a)(2).  The applicant is also to submit, among other things, medical records, including those involving psychiatric history; criminal history; recent psychiatric evaluation; and "evidence of the applicant's reputation"; and a valid authorization form allowing OMH to obtain/review a variety of health records.  14 NYCRR 543.5(a)(3).

---

[23]  Although not determinative, the undersigned notes that 14 NYCRR 543.1(d), 14 NYCRR 543.2, and 14 NYCRR 543.5 refer to the certificate of relief from disabilities process an "administrative process" or an "administrative review."

After reviewing the application, the Commissioner or "his/her designees" issue a written decision that includes:

> (i) a summary of the information utilized in reaching the decision;
> (ii) a summary of the applicant's criminal history (if any);
> (iii) a summary of the psychiatric evaluation prepared to support the request for relief (if any);
> (iv) a summary of the applicant's mental health history;
> (v) a summary of the circumstances surrounding the firearms disability imposed by 18 U.S.C. section 922(d)(4) and (g)(4);
> (vi) an opinion as to whether or not the applicant's record and reputation are such that the applicant will or will not be likely to act in a manner dangerous to public safety and whether or not the granting of the relief would be contrary to the public interest; and
> (vii) a determination as to whether or not the relief is granted.

14 NYCRR § 543.5.

Some of the responsibilities of the panel members seem administrative, such as listing, reviewing, and summarizing the materials candidate's submitted materials. However, the panel also reaches a conclusion based on that review: "an opinion as to whether or not the applicant's record and reputation are such that the applicant will or will not be likely to act in a manner dangerous to public safety and whether or not the granting of the relief would be contrary to the public interest." 14 NYCRR § 543.5(1)(vi). What is not clear from the face of § 543.5(1)(vi) is whether this determination is adjudicative or administrative in nature. The Court's "factual inquiry" is limited as the degree of discretion the panel members have in implementing the regulations has not been addressed. For example, the undersigned is unaware whether there are other sources of guidance for the panel members to follow in making their determination of the applicant's "dangerousness," such as a test, definition, or internal guideline – beyond the regulations – that OMH advises the panel members to apply in making their

determination,[24] or if they are instructed to rely solely on their experience and expertise. *See* 14 NYCRR § 543.5(1)(vi).  Information about the degree of discretion panel members hold is significant because it would allow this Court to understand whether application of § 543.5(1)(vi) is a check-box type of assessment with little flexibility (administrative) or a discretionary (judicial) analysis.

Thus, although the Court has before it the regulations which list the documents the panel is to consider in assessing whether to issue or deny a certificate of relief from disabilities related to firearms, it does not have any specifics about the implementation of the responsibilities these officials performed with respect to plaintiff's denial of a certificate for relief of disabilities related to firearms.  Having such information about the specifics of the panel members' application of 14 NYCRR § 543.5(1)(vi) would likely allow for a full and proper "factual inquiry." *Victory*, 814 F.3d at 66.  The Court has before it no depositions or affidavits of the panel members nor any officials from the New York State Office of Mental Health ("OMH").  *See generally Cassidy v. Madoff*, 2020 WL 554529, at *7 (Noting that the defendants "have not addressed whether the [panel members]' actions or responsibilities in this case were administrative, as opposed to judicial.") (citing *Victory*, 814 F.3d at 65-66 ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.") (quoting *Burns v. Reed*, 500 U.S. 478, 486, (1991)); *King v. Simpson*, 189 F.3d 284, 287-88 (2d Cir. 1999) ("In determining whether an official is entitled to absolute immunity, we must take a functional approach and look to the particular acts or responsibilities that the official performed.").  As the record stands, the undersigned is

---

[24]   For example, input on whether some factors are entitled to more or less weight in the panel members' dangerousness analysis.

unable to make a complete "factual inquiry" whether the panel members' "particular acts" and analyses are closer more judicial or more administrative in nature.  *King*, 189 F.3d at 287-88.

In sum, under the facts and circumstances of this case as it is currently presented, it is not clear from the four corners of the proposed amended complaint or defendants' opposition that the defendant panel members are entitled to quasi-judicial immunity.

## 2.  **Qualified Immunity**

Defendants argue that Dr. Li-Wen Grace Lee, Carmen Barner, and Tony Trahan, are also entitled to qualified immunity.  *See* Dkt. No. 37-2 at 16-19.  As this Court has recently reiterated:

> "The doctrine of qualified immunity protects government officials from liability for civil damages[25] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted).  A case directly on point is not required, however, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

> Additionally, a state actor is entitled to qualified immunity "when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right."  *Trapani v. Annucci*, No. 9:21-CV-681, 2022 WL 7290107, at *13 (N.D.N.Y. June 21, 2022), *report and recommendation adopted*, No. 9:21-CV-681, 2022 WL 4008027 (N.D.N.Y. Sept. 1, 2022) (citing *Manganiello v. City of New York*, 612 F.3d 149, 165 [2d Cir. 2010]).  Qualified immunity "affords government officials 'breathing room' to make reasonable — even if sometimes mistaken — decisions."  *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 [2012]).  "The qualified immunity standard

---

[25]  *See also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit").

is forgiving and protects all but the plainly incompetent or those who knowingly violate the law." *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (internal quotation marks and citation omitted).

*Roberts v. Fleury*, No. 6:22-CV-0918 (GTS/TWD), 2024 WL 1242231, at *11-23 (N.D.N.Y. Mar. 22, 2024). "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that [their] alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Defendants bear the burden of demonstrating that challenged conduct was objectively reasonable in light of the law existing at the time of the alleged constitutional violation. *See Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citing *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000)). Considering the fact-intensive nature of a qualified immunity inquiry, the Second Circuit has indicated that it disfavors grants of qualified immunity at the motion to dismiss stage.[26] *See McKenna v. Wreight*, 386 F.3d 432, 435 (2d Cir. 2004) (noting, generally, that "the defense of qualified immunity cannot support the grant of a 12(b)(6) motion for failure to state a claim upon which relief can be granted") (citing *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983)).

Here, plaintiff alleges that he was not provide with any pre-deprivation due process in that he was not informed, at the time of his hospital admission,[27] that his admission – which he alleges only involved "emergency observation and evaluation"[28] –

---

[26] Although this matter is before the Court on a motion to amend rather than motion to dismiss, as noted above, the same standard of review applies.

[27] Plaintiff does not appear to be alleging that he was denied due process in connection with his involuntary commitment; rather, that the due process claims relate to his lack of notice of his referral to, and placement on, the NICS database, and denial of removal from the NICS database.

[28] Plaintiff contends that "he was never 'involuntarily committed' within the meaning of C.F.R. 27 § 478.11, MHL § 9.27, and § 9.37" as his hospital admission "does not fall into that category of individuals." Dkt. No. 34-1 at 2¶6. He further contends that a "person admitted under MHL 9.39 is only alleged to have a mental illness and is admitted for emergency observation, care, and treatment." Dkt. No. 34-2 at 9 ¶41.

would result in being placed in the NICS database.  Dkt. No. 34-2 at 25 ¶136.  Plaintiff

further argues that, despite the existence of OMH's certificate of relief process that can

remove an individual from the reporting database, "Defendants enforce and implement

a policy that prohibits automatic removal from the SAFE Act database of individuals

who, as MHL 9.39 § admissions, were not 'involuntarily committed' and should not have

been included in the database in the first instance."  Dkt. No. 34-2 at 25 ¶137.

> Due process usually requires "some kind of hearing before the State
> deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113,
> 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). As the Supreme Court has
> observed, however, "[d]ue process . . . is a flexible concept that varies with
> the particular situation." Id. Thus, "[i]n some circumstances . . . the Court
> has held that a statutory provision for a postdeprivation hearing . . .
> satisfies due process." *Id.* at 128. "[A] postdeprivation hearing might
> satisfy due process where a predeprivation hearing is 'unduly burdensome
> in proportion to the liberty interest at stake,' or 'where the State is truly
> unable to anticipate and prevent a random deprivation of a liberty interest."
> ' *Bailey v. Pataki*, 708 F.3d 391,401 (2d Cir.2013) (quoting *Zinermon*, 494
> U.S. at 132). "'[W]here the State feasibly can provide a predeprivation
> hearing,' however, 'it generally must do so regardless of the adequacy of a
> postdeprivation . . . remedy.'" *Id.* (quoting *Zinermo*n, 494 U.S. at 132).

*Best v. Schneider*, No. 12-CV-6142 NGG MDG, 2015 WL 5567062, at *11 (E.D.N.Y.

Sept. 21, 2015).

> [A]lthough notice and a pre[-]deprivation hearing are generally required, in
> certain circumstances, the lack of such pre [-]deprivation process will not
> offend the constitutional guarantee of due process, provided there is
> sufficient post[-]deprivation process." *Catanzaro v. Weiden*, 188 F.3d 56,
> 61 (2d Cir.1999). "[N]ecessity of quick action by the State or the
> impracticality of providing any meaningful pre[-]deprivation process, when
> coupled with the availability of some meaningful means by which to
> assess the propriety of the State's action at some time after the initial

---

The Second Circuit has noted, in a summary order, that "Section 9.39 is understood as a 'commitment' by
New York courts." *Phelps v. Bosco*, 711 F. App'x 63, 65 (2d Cir. 2018) (summary order) (citing *Matter of
George L.*, 85 N.Y.2d 295, 305 n.3, 624 N.Y.S.2d 99, 648 N.E.2d 475 (1995) ("referring to Section 9.39
as 'an involuntary civil commitment'").

taking, can satisfy the requirements of procedural due process." *Id.* (internal quotation marks and citation omitted).

*Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009).

Defendants set forth no argument[29] or support to suggest that there existed exigent circumstances such that notice was not possible at/near the time of plaintiff's admission. Indeed, defendants do not address plaintiff's argument[30] that the alleged lack of notice that his hospital admission would result in referral to the NICS database was a violation of his due process rights, nor do they assess its applicability to qualified immunity. Despite defendants' assertion that the statute of limitations began to run in 2014, when plaintiff was hospitalized, plaintiff presents at least a colorable argument that he was not aware of his placement in the NICS database until his attempt to purchase a firearm was rejected at some point in 2019. *See Goston v. Potter*, 2010 WL 4774238, at *5 (N.D.N.Y. Sept. 21, 2010) (citing cases) (""When amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment."), *report and recommendation adopted*, 2010 WL 4736261 (N.D.N.Y. Nov. 16, 2010).

Further, the defendants' argument in its opposition also omits proper analysis of the first element of the qualified immunity test – whether a Second Amendment

---

[29]   The undersigned is not concluding that no such argument could be made (especially in the context of a mental health hospital admission), only that none was made. Further, the undersigned is not concluding that there are no facts that could exist to show that plaintiff was provided with such predeprivation notice, only that none are available to the Court at this juncture.

[30]   It appears that, as to plaintiff's due process claims, defendants rely on their timeliness/statute of limitations arguments. *See* Dkt. No. 37-2 at 19.

constitutional violation occurred – and assess only whether there was a clearly-established right. *See* Dkt. No. 37-2.

Ultimately, defendants do not meet their burden such that this Court can determine, at this stage, that plaintiff has failed to set forth a valid claim that defendants violated his constitutional rights under the due process clause or that such constitutional rights were clearly established at the time of the alleged violation.

> Without the benefit of discovery, it is difficult to evaluate whether qualified immunity is appropriate in this matter, given the factual allegations at issue. While Plaintiff's allegations are sufficient to survive a motion to dismiss, they hardly provide the Court with a sufficient basis to ascertain the precise contours of the right asserted and the objective reasonableness of Defendants' alleged actions. Under these circumstances, the question of qualified immunity is best left to resolution at the [dispositive motion] stage.

*Lyman v. NYS OASAS*, No. 1:12-CV-530 (MAD/RFT), 2013 WL 6493101, at *5 (N.D.N.Y. Dec. 10, 2013).  Constitutional challenges under the Second and Fourteenth Amendment are "complex issues," and on this record and at this juncture, they cannot be determined.  *See Phelps*, 711 F. App'x at 65 (noting that the plaintiff did not raise a constitutional challenge on appeal, and if he had, "[s]uch challenge would present complex issues, whether under the Second Amendment or Due Process Clause.").  As the undersigned cannot decide on this record whether a Second or Fourteenth Amendment violation occurred,[31] it is unable to determine the applicability of qualified

---

[31] *See generally Livingston v. Trustco Bank*, No. 1:20-CV-1030 (GTS/DJS), 2021 WL 6199655, at *3 n.3 (N.D.N.Y. Apr. 23, 2021) ("Significantly, to the extent the factual disputes identified could or should be resolved on this Motion, they would be resolved in favor of Plaintiff since for purposes of a futility analysis the allegations in a proposed amended pleading must be accepted as true.") (citing *Yennard v. Herkimer BOCES*, No. 6:16-CV-556 (GTS/ATB), 2017 WL 11317860, at *2 (N.D.N.Y. June 30, 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

immunity. Thus, defendants have failed to meet their burden, at this juncture, of demonstrating that the proposed defendant panel members are entitled to qualified immunity with respect to plaintiff's Second or Fourteenth Amendment claims.

### 3. **Miscellaneous**

As a final note, to the extent plaintiff seeks to amend to terminate (1) claims against defendant Sullivan in her individual capacity, (2) all claims against Rossana Rosado, (3) claims against John Does 1-5 and Jane Does 1-5; (4) the Fourth Amendment failure to train or supervise claim; and (5) the Fourteenth Amendment post-deprivation claim, it is recommended that such amendments – which defendants do not oppose – be permitted. Further, plaintiff's motion to amend indicates that her proposed amended pleading terminates as a defendant the Division of Criminal Justice Services. *See* Dkt. No. 34-3 at 5. However, plaintiff did not name the Division of Criminal Justice Services in the original complaint, either in the caption or the body of the complaint.[32] *See* Dkt. No. 1. In addition, although not named in the caption of the original complaint, under the "parties" heading, plaintiff listed defendants Office of Mental Health and Office of NICS Appeals and SAFE Act. *See id.* at 2. Accordingly, to the extent the original complaint named as defendants Division of Criminal Justice Services, Office of Mental Health, and Office of NICS Appeals and SAFE Act and the proposed amended pleading abandons any such claims or defendants, it is recommended that the motion to amend be granted and these parties be terminated. *See* Dkt. No. 34-2 at 1-2 (striking out the

---

[32] Plaintiff named Rossana Rosado, Commissioner New York State Division of Criminal Justice Services in her Official Capacity, but did not separately identify New York State Division of Criminal Justice Services as a defendant. *See* Dkt. No. 1 at 1-2.

paragraphs identifying as parties "Defendant Office of Mental Health" and "Defendant Office of NICS Appeals and SAFE Act").

IV. **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that plaintiff's motion to amend, Dkt. No. 34, be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) the motion to amend be DENIED to the extent plaintiff seeks to (a) add a claim that New York State Mental Hygiene Law § 7.09(j) is unconstitutionally overbroad; and (b) proceed with any claims against Does 1-2;

(2) the motion to amend be otherwise GRANTED; and it is further

**RECOMMENDED**, that Does 1-2 be **DISMISSED** from this action without prejudice; and it is further

**RECOMMENDED**, that, insofar as the original complaint may be read as naming as defendants the Division of Criminal Justice Services, Office of Mental Health, or Office of NICS Appeals and SAFE Act, any such claims be **DISMISSED** as abandoned and these defendants terminated; and it is further

**RECOMMENDED**, that within ten (10) days from the filing date of the District Court's Order reviewing this Report-Recommendation & Order, plaintiff be directed file an amended complaint that is fully compliant with the Court's directives, including only those parties and claims upon which leave to amend has been granted, and that once filed, that amended complaint will serve as the operative pleading and the caption be adjusted at that time to reflect the current defendants; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.

Dated: January 31, 2025
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge