UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
D.B.,

                       Plaintiff,                1:22-CV-0282 (MAD/PJE)

        -against-

                              **FIRST AMENDED
COMPLAINT**

ANN MARIE T. SULLIVAN, MD, Commissioner,
Office of Mental Health, in her Official Capacity,
LI-WEN GRACE LEE, M.D., Individually and
officially, CARMEN BARBER, Individually and officially,
TONY TRAHAN, Individually and officially,

                        Defendants.
-----------------------------------------------------------------x

Plaintiff, "D.B.", by his attorneys The Bellantoni Law Firm, PLLC, for his First Amended

Complaint, respectfully states the following:

## NATURE OF THE ACTION

1.      This is an action for compensatory, punitive, declaratory, and injunctive relief, to

include presumed monetary damages in at least a nominal amount, costs, disbursements, and

reasonable statutory attorney's fees pursuant to 42 U.S.C. §1988, for continuing and imminent

irreparable harm to Plaintiff and all similarly situated individuals in New York State arising from

violations to their constitutional rights as protected by the Second Amendment and Fourteenth

Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2.      Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action

arises under the United States Constitution and laws of the United States, and under 28 U.S.C.

§ 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

3.      This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4.      Plaintiff "D.B." ("Plaintiff") is a citizen of the United States and a resident of the Commonwealth of Massachusetts.

5.      Plaintiff brings this proceeding anonymously based on the confidential, sensitive, and potentially stigmatizing nature of the factual information giving rise to this proceeding, including his mental health information and allegations of Defendants that he is a "dangerous individual" who is disqualified from possessing firearms, which may have a negative and debilitating effect on, *inter alia*, Plaintiff's personal safety, and present and future employment.

6.      Defendant ANN MARIE T. SULLIVAN, MD ("Commissioner Sullivan") sued herein in her official capacity, is the Commissioner of the New York State Office of Mental Health (OMH).

7.      At all times relevant to this proceeding/action, Commissioner Sullivan was responsible for creating, overseeing, and implementing policies, procedures, and training for OMH and the Office of NICS Appeals and SAFE Act in accordance with the New York State Mental Hygiene Law ("MHL") and NICS reporting requirements and statutory parameters.

8.      Defendant LI-WEN GRACE LEE, M.D. ("Dr. Lee") sued herein in her individual and official capacity, is a psychiatrist and a "Panel Member" for the Certificate of Relief From Firearm Disabilities program of the SAFE ACT Office ("COR").

9.      "Panel Members," *inter alia*, individually and collectively enforce and implement policies and procedures of the NICS Office, enforce New York State laws, and render final determinations that affect and implicate the constitutional rights of individuals whose personal identifying information is listed in the New York State NICS reporting database (the "database"), as detailed further below, and communicated to NICS.

10.     Consistent with her obligations under Mental Hygiene Law § 7.09(j) and 14 NYCRR § 543.5, Sullivan shares her statutory authority with the Panel Members as the individuals to consider applications for a COR and issue a final determination in writing explaining the reasons for denying or granting the requested relief. Sullivan retains statutory to grant Plaintiff equitable relief under the statutes.

11.     The defendant Panel Members reviewed, considered, and made the final determination denying Plaintiff's request to be removed from the NYS reporting database, thereby violating his Second Amendment rights.

12.     Defendant CARMEN BARBER ("Barber"), sued in her individual and official capacity, is one such Panel Member.

13.     Defendant TONY TRAHAN ("Trahan"), sued in his individual and official capacity, is another such Panel Member.

14.     In denying Plaintiff's COR application, the Panel Members acted intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

15.     Each of the defendants has the ability to remove an individual's identifying information from the reporting database by, *inter alia,* granting a COR.

16.     Each of the defendants acted intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

17.    Sullivan, Lee, Barber, and Trahan were responsible for, and directly created, oversaw, and implemented policies and procedures for including, and maintaining, Plaintiff's information in the NYS NICS reporting database.

18.    Lee, Barber, and Trahan personally and directly implemented the policies and procedures described herein that resulted in the violation of Plaintiff's constitutional rights as protected by the Second and Fourteenth Amendments.

19.    Lee, Barber, and Trahan personally and directly implemented the policies and procedures described herein resulting in Plaintiff's personal identifying information being (i) improperly maintained in the state mental health database for firearms reporting purposes and/or (ii) improperly communicated to other federal and state agencies.

## STATUTORY FRAMEWORK

20.    The Federal Brady Handgun Violence Prevention Act of 1993 ("Brady Act" prohibits any person from selling or otherwise disposing of any firearm or ammunition to any person who has been involuntarily "committed to a mental institution" (18 U.S.C. section 922 (d)(4)) and further prohibits any person who has been involuntarily "committed to a mental institution" from shipping or transporting in interstate or foreign commerce, or possessing in or affecting commerce, any firearm or ammunition; or receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. See, 18 U.S.C. section 922 (g)(4);  14 NYCRR 543.1(a).

21.    Under the Federal NICS Improvement Amendments Act of 2007, Public Law 110-180, section 105 ("NARIP"), the Brady Act was amended to establish the National Instant Criminal Background Check System (NICS). 14 NYCRR 543.1(b).

22.     The NARIP was developed to improve the completeness, automation, and transmission of records to state and federal systems used by the NICS. These include records of criminal history, felony convictions, warrants, protective orders, convictions for misdemeanors involving domestic violence and stalking, drug arrests and convictions, mental health adjudications, and other information that may disqualify an individual from possessing or receiving a firearm under federal law.[1]

23.     The NICS Index contains records provided by local, state, and federal agencies about persons prohibited from receiving firearms under federal law.

24.     NICS contains records concerning certain events, such as criminal convictions and mental health adjudications and findings that may disqualify a person from purchasing a firearm.

25.     All records in the NICS Index are considered "federally disqualifying records" and will prohibit the transfer of a firearm. 14 NYCRR 543.1(b).

26.     The 2007 amendments also require the establishment of a "certificate of relief from disabilities" process to permit a person who has been or may be disqualified from possessing a firearm pursuant to 18 U.S.C. section 922 (d)(4) and (g)(4) to petition for relief from that disability. 14 NYCRR 543.1(b).

### NYS Office of Mental Health Transmission of Mental Health Records to NICS

27.     New York Mental Hygiene Law § 7.09 authorizes the Office of Mental Health (OMH) to collect, retain, modify, or transmit data or records for inclusion in the NICS system for the purpose of responding to NICS queries regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 U.S.C. 921(a)(3). 14 NYCRR § 543.1(c).

---

[1] https://bjs.ojp.gov/programs/nics-improvement-amendments-act#7k6m7f

28.     The records which the Office of Mental Health (OMH) is authorized by law to collect, retain, modify, or transmit **are expressly limited to** persons who have been **involuntarily committed** pursuant to article 9 or 10 of the Mental Hygiene Law, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act. 14 NYCRR § 543.1(c) (emphasis added).

29.     Under MHL § 7.09 (j)(1) the OMH Commissioner, in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records to (1) DCJS or to the FBI Criminal Justice Information Services Division (CJIS) for the purposes of responding to queries to the NICS system regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3), in accordance with applicable federal laws or regulations, or (2) DCJS, which may re-disclose such data and records only for determining whether a license issued pursuant to Penal Law § 400.00(11) should be denied, suspended or revoked or for determining whether a person is no longer permitted under federal or state law to possess a firearm. **Such records**, which may not be used for any other purpose, **shall include only** names and other non-clinical identifying information **of persons who have been involuntarily committed to a hospital** pursuant to MHL Article 9.[2]

30.     The records transmitted to NICS and CJIS[3] by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. 14 NYCRR 543.1(b).

---

[2] "[O]r section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter." N.Y. Mental Hyg. Law § 7.00(j)(1).

[3] References to NICS and CJIS are collectively referred to hereafter as "NICS".

6

31.     Under MHL 7.09(j)(1) the commissioner, in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records: (i) DCJS or FBI/CJIS for the purposes of responding to queries to NICS regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3) or (ii) to DCJS which may re-disclose such data and records only for determining whether a license issued pursuant to section 400.00 of the penal law should be denied, suspended or revoked, under subdivision eleven of such section, or for determining whether a person is no longer permitted under federal or state law to possess a firearm. (cleaned up) (emphasis added).

32.     Such records, which may not be used for any other purpose, shall include only names and other non-clinical identifying information of persons who have been involuntarily committed to a hospital pursuant to article nine of this chapter…. (cleaned up). MHL 7.09(j)(1).

33.     A person admitted under MHL 9.39 is only alleged to have a mental illness and is admitted for emergency observation, care, and treatment.

34.     Even an individual involuntarily admitted under MHL 9.39 is still only alleged to have a mental illness.

35.     There is no historical tradition in this Nation of barring the possession of Arms for self-defense purposes, including firearms, of individuals who are merely alleged to have a mental illness.

***"Committed to a Mental Institution"***

36.     Upon being contacted by a Federal firearm licensee (FFL) prior to transferring a firearm, NICS will provide information on whether a person is prohibited from receiving or possessing a firearm under State or Federal law. 14 NYCRR 543.1(b).

37.     Prior to the transfer of a firearm through an FFL, an individual is required to complete ATF Form 4473, "Firearms Transaction Record" (Form 4473). [See, Ex. 1].

38.     Question 21(f) of Form 4473 is, "Have you ever been adjudicated as a mental defective OR have you ever been <u>committed</u> to a mental institution?" (emphasis added).

39.     The Form 4473 "NOTICES, INSTRUCTIONS, AND DEFINITIONS…Question 21(f)" provides,

> **"Committed to a Mental Institution:** A formal commitment of a person to a mental question by a court, board, commission, or other lawful authority. The term Permanent resident aliens and aliens legally admitted to the United States pursuant includes a commitment to a mental institution involuntarily. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. **The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.** (emphasis added). [Ex. 1].

40.     An individual who has been admitted to a mental institution for "emergency observation and evaluation", whether voluntarily or not, has neither been "Committed to a Mental Institution" nor "involuntarily committed." See, MHL § 9.27, § 9.37, 27 C.F.R. § 478.11. See, *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 314 (W.D.N.Y. 2018) (the term "committed to a mental institution" "does not include [the placement of] a person in a mental institution for observation or a voluntary admission to a mental institution."). [Ex. 2].

41.     Under Mental Hygiene Law § 9.37, "Involuntary admission on certificate of a director of community services or his designee", if an individual who has a mental illness for which "immediate inpatient care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others is admitted to a hospital, and such patient "is to be retained for care and treatment beyond [a 72-hour period] and he or she does not agree to remain

in such hospital as a voluntary patient, a certificate signed by another examining physician who is a member of the psychiatric staff of the hospital that the  patient is in need of involuntary care and treatment shall be filed with the hospital."  [See also, Ex. 2].

42.     "Likelihood of serious harm" shall mean: 1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear or serious physical harm." MHL § 9.37 (b).

43.     No New York State or federal law authorizes OMH to collect, retain, modify, or transmit data or records for inclusion in the NICS system of individuals who were only subject to "emergency observation and evaluation" and not converted to "involuntary commitment" in a mental health facility.

44.     27 C.F.R. § 478.11 defines "committed to a mental institution" as a "formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution."

45.     An individual admitted to a hospital, mental institution, and/or psychiatric facility under Mental Hygiene Law §9.39, has not been "Committed to a Mental Institution" within the meaning of 27 C.F.R. § 478.11.

46.     Upon performing a background check, NICS will provide the FFL with one of 3 responses: "Proceed", "Deny" or "Delay".

47.    If an individual is listed in the NICS database as a person prohibited from purchasing, possessing, and/or receiving firearms (a "prohibited person"), NICS will issue a "Deny", which indicates to the FFL that the individual is prohibited from receiving and/or possessing firearms under state or federal law.

48.    A "Deny" response prohibits the FFL from transferring a firearm to such individual.

49.    An individual identified in State mental health database and/or the NICS database as having been "involuntarily committed to a mental institution" will be prohibited from purchasing or receiving any firearm until their information is no longer maintained in the State mental health database and /or the NICS database.

***OMH: Improper Transmission of Mental Health Records to the NYSP and NICS***

50.    OMH has a policy and procedure established and/or implemented by the Panel Members of transmitting the mental health records and personal identifying information to NICS of individuals who were not involuntarily committed (the "Policy").

51.    The records transmitted to NICS and the FBI CJIS[4] by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. See, 14 NYCRR 543.1(b).

52.    The OMH and DCJS policies enforced and implemented by Sullivan and the Panel Members require and/or cause the transmission to NICS the records of people who were admitted to a hospital only for "emergency evaluation and observation" under MHL § 9.39.

53.    Defendants only have authority to collect, retain, modify, or transmit records pertaining to people who have been **involuntarily committed** pursuant to MHL Article 9 or 10,

---

[4] References to NICS and the FBI/CJIS are collectively referred to hereafter as "NICS".

article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act. 14 NYCRR § 543.1(c) (emphasis added).

54.    Admission to a mental institution "for observation or a voluntarily admission to a mental institution" is not a "formal commitment to a mental institution by a court, board, commission, or other lawful authority."

55.    Admission to a mental institution under MHL § 9.39is not an "involuntary commitment" under MHL Article 9.

56.    An individual who has been admitted to a mental institution for "emergency observation and evaluation", whether voluntarily or not, has neither been "Committed to a Mental Institution" nor "involuntarily committed." See, MHL § 9.27, § 9.37, 27 C.F.R. § 478.11. See, *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 314 (W.D.N.Y. 2018) (the term "committed to a mental institution" "does not include [the placement of] a person in a mental institution for observation or a voluntary admission to a mental institution.").

57.    Under MHL § 9.39, an individual "Emergency admissions for immediate observation, care, and treatment", a hospital "may receive and retain therein as a patient for a period of fifteen days any person ***alleged to have a mental illness*** for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others." (emphasis added).

58.    Individuals admitted under MHL 9.39 are only alleged to have a mental illness and are retained for emergency observation, care and/or treatment.

59.    An admission under MHL § 9.39 "Emergency admissions for immediate observation, care, and treatment" does not fall within the definition of having been "Committed to a Mental Institution."

60.     An admission under MHL § 9.39 is not a finding or adjudication (formal or otherwise) that an individual has a mental illness.

61.     Persons in a mental institution for observation or on a voluntary basis are not within the purview of the federal firearms statute.

62.     Under MHL § 9.39(a)(2), even if a court were to determine that there was "reasonable cause" to confine an individual under MHL 9.39, "such order entered by the court ***shall not be deemed to be an adjudication that the patient is mentally ill***, but only a determination that there is reasonable cause to retain the patient for the purposes of this section." (emphasis added).

63.     No New York State or federal law authorizes OMH to collect, retain, modify, or transmit data or records for inclusion in the NICS system of individuals who were only subject to "emergency observation and evaluation" and not converted to "involuntary commitment" in a mental health facility, including individuals admitted pursuant to MHL § 9.39.

64.     Defendants know and/or should know by reason of their position that an admission to a mental institution under MHL § 9.39is not an "involuntary commitment" under MHL Article 9.

65.     In written communications of OMH and the SAFE Act Office, Defendants acknowledge:

> "The records which OMH transmits are **limited to persons** who have been **involuntarily committed** to a psychiatric hospital pursuant to Article 9 or 10 of the NYS Mental Hygiene Law (MHL), Article 730 or Section 330.20 of the NYS Criminal Procedure Law, Section 402 of or 508 of the NYS Correction Law or Sections 322.2 or 353.4 of the NYS Family Court Act."

(emphasis added).

66.    By collecting, retaining, modifying, and/or transmitting records pertaining to people who were only admitted for evaluation and observation under MHL § 9.39, Defendants are falsely identifying to NICS that such individuals, like Plaintiff, were "involuntarily committed in a mental institution", which they were not.

67.    Defendants' inclusion of such individuals, like Plaintiff, in the State mental health database for NICS reporting, is done intentionally, maliciously and/or in deliberate disregard of such individual's constitutional rights.

68.    Defendants know and intend for individuals whose personal identifying information is retained in the State mental health database for NICS reporting will be permanently barred by NICS from purchasing, possessing, and/or receiving firearms permanently and/or until Defendants correct and/or remove such records from the database.

69.    Defendants' enforcement and implementation of such conduct and/or policies described herein violates the Second Amendment.

70.    There is no historical tradition in this Nation of barring the possession of Arms for self-defense purposes, including firearms, of individuals who are merely thought to have a mental illness.

71.    Defendants have no authority to collect, retain, modify, and/or transmit records pertaining to people who were only admitted for evaluation and observation under MHL § 9.39; and that being admitted for "observation and evaluation" does not mean that the person was "involuntarily committed to a mental hospital" for NICS reporting purposes or otherwise; and that being admitted for evaluation and observation under MHL § 9.39 does not constitute a prohibitor to possessing, purchasing, and/or receiving firearms for purpose of NICS reporting.

## MATERIAL FACTS

***Plaintiff's Emergency Observation and Evaluation in 2014***

72.     In 2014, Plaintiff was subject to an emergency evaluation for observation at Samaritan Hospital in Troy, New York.

73.     Plaintiff has no history of mental illness or suicidal/homicidal ideation and has had no prior or subsequent mental health history and/or hospitalizations. Plaintiff has also never been adjudicated "mentally defective."

74.     Plaintiff was released from the hospital within 72 hours of his admission.

75.     Plaintiff's "emergency evaluation" status was never converted to an "involuntary commitment."

76.     By being released after a period of psychiatric evaluation and observation, Plaintiff was deemed by Samaritan Hospital not to be a danger to himself or others.

77.     Had Plaintiff been evaluated and deemed by a psychiatrist to be a danger to himself or others, Plaintiff would not have been released from the mental health facility.

78.     Had Plaintiff been evaluated and deemed by a psychiatrist to be a danger to himself or others, Plaintiff's status at or before the "72-hour mark" would have been converted to an "involuntary commitment".

79.     Had Plaintiff's status been converted to an "involuntary commitment", which it was not, Plaintiff would have been entitled - as of right - to (i) notice that he was going to be kept involuntarily, (ii) a lawyer through Mental Hygiene Legal Services; and (iii) a hearing before a judge to  contest the conversion to involuntary commitment so that he could be released.

80.     Plaintiff has no statutory prohibitors to the possession of firearms under state or federal law.

81.     Years after his hospitalization at Samaritan Hospital, Plaintiff learned that New York State falsely informed the federal government, including NICS, that he had been "involuntarily committed" to a mental health facility in 2014, referring to his admission to Samaritan Hospital.

82.     Plaintiff has been a firearms owner and was issued a firearms identification card (FID) by the Commonwealth of Massachusetts at the age of 15, which allowed him to purchase and possess long guns and related ammunition.

83.     In 2019, Plaintiff attempted to purchase a .22 hunting rifle in his home state (commonwealth) of Massachusetts.

84.     Plaintiff completed the ATF Form 4473 correctly indicating "No" to Question 21(f), to wit, "have you ever been adjudicated as a mental defective OR have you ever been committed to a mental institution".

85.     The FFL conducted a background check through the federal NICS database.

86.     NICS issued a "Deny", which prohibited the FFL from transferring any firearms to Plaintiff.

87.     Plaintiff's NICS denial caused him public embarrassment and humiliation.

88.     Plaintiff later learned that NICS denied the purchase because Defendants falsely communicated to the federal government that Plaintiff had been "involuntarily committed" to a mental health facility.

89.     An "involuntary commitment" to a mental health facility is a prohibitor to the purchase, possession, receipt, and/or ownership of firearms under New York State and federal law. See, 18 U.S.C. § 922(g); New York Penal Law § 265.00(16).

90.    There is no New York State or federal statute that prohibits the purchase, possession, receipt, and/or ownership of firearms for simply being subject to admission for an emergency evaluation and observation.

91.    Plaintiff is unable to legally purchase or possess any firearms as a result of Defendants' inclusion of Plaintiff's information as a prohibited person in the SAFE Act database and the communication to the federal government, including NICS, that Plaintiff is a prohibited person.

92.    Plaintiff has been, and continues to be, subject to arrest and prosecution for possessing firearms because New York State and the federal government, including NICS, deem him a person prohibited from possessing, purchasing, receiving, and owning firearms.

93.    New York State and the federal government, including NICS, deem Plaintiff a person prohibited from possessing, purchasing, receiving, and owning firearms because Defendants have continued to maintain information about Plaintiff in the SAFE Act database that falsely indicates that he is a person prohibited from firearm possession purchase, receipt, and ownership based on his 2014 emergency evaluation.

94.    Plaintiff does not fit the criteria for being placed in the NICS database because he is not a "prohibited person" under 18 U.S.C. § 922(g) or New York State law. See, 27 C.F.R. § 478.11.

95.    Defendants never provided Plaintiff notice when his personal identifying information was entered into the State's mental health database.

96.    Defendants did not provide Plaintiff with notice that they were communicating to, *inter alia*, NICS that he was a person prohibited from purchasing, possessing, receiving, and transferring firearms by reason of an involuntary commitment to a mental health facility.

16

97.    Defendants did not provide Plaintiff with an opportunity to be heard before his personal identifying information was communicated to, *inter alia*, NICS.

98.    On or about April 3, 2020, Plaintiff notified Defendants that his personal identifying information was improperly contained in the SAFE Act mental health database; that he was incorrectly identified as having been involuntarily committed; and that his information should be removed from the SAFE Act database.

99.    Plaintiff provided Defendants with his hospital records from the 2014 emergency evaluation to confirm to Defendants that he had not been "involuntarily committed" to a mental health facility.

100.    Plaintiff's hospital records from the 2014 emergency evaluation and observation demonstrate that he was admitted pursuant to MHL § 9.39 for emergency evaluation and observation only – whether voluntarily or involuntarily.

101.    Plaintiff's hospital records demonstrate that his admission was never converted to an "involuntary commitment" under either MHL § 9.27 or § 9.37.

102.    Plaintiff's release from the hospital after being observed and evaluated demonstrates that he was not "involuntarily committed" to a mental health facility.

103.    Plaintiff requested from Defendants that his personal identifying information be removed from the SAFE Act database.

104.    Defendants refused, and continue to refuse, to remove Plaintiff's personal identifying information from the SAFE Act database.

105.    Defendants continue to knowingly and falsely communicate to, *inter alia*, NICS that Plaintiff was "involuntarily committed" to a mental health facility.

106.    Defendants knowingly, intentionally, and deliberately disregard the fact that Plaintiff was not involuntarily committed to a mental health facility; that they have no statutory authority to communicate to, *inter alia*, NICS that Plaintiff was "involuntarily committed" to a mental health facility; and that their refusal to remove Plaintiff from the SAFE Act database is violating his constitutional rights.

107.    Defendants' refusal to remove Plaintiff from the SAFE Act database is knowing, malicious, deliberately indifferent to and in reckless disregard for Plaintiff's constitutional rights.

108.    No reasonable individual in Defendants' position would believe that continuing to maintain Plaintiff's personal identifying information in the SAFE Act mental health database is reasonable or lawful.

109.    By communicating to, *inter alia*, NICS that Plaintiff is a person who has been "involuntarily committed to a mental health facility", which he is not, Defendants are actively preventing Plaintiff from purchasing, possessing and/or receiving firearms.

110.    By refusing to remove Plaintiff's personal identifying information from the SAFE Act database, Defendants continue to prevent Plaintiff from purchasing, possessing, receiving, and/or transferring firearms.

111.    Defendants have no legal authority or privilege to collect, retain, modify, or transmit data or records for inclusion in the NICS system for the purpose of responding to NICS queries the personal identifying information of Plaintiff or any other individual who was only subject to emergency evaluation and observation and not thereafter involuntarily committed to such mental health facility.

## DECLARATORY JUDGMENT ALLEGATIONS

112.    There is an actual and present controversy between the parties. Plaintiff contends that his Second, and Fourteenth Amendment rights were, and are continuing to be, violated by Defendants' actions and failures to act.

113.    Defendants are the proximate cause of Plaintiff's inability to purchase, possess, and/or receive firearms in violation of his right to possess and carry firearms for self-protection as guaranteed by the Second Amendment. See, *D.C. v. Heller*, 554 U.S. 570, 592 (2008) ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").

114.    Because of the information communicated by Defendants to, *inter alia*, NICS and/or the FBI, Plaintiff is permanently prevented from purchasing, possessing, and/or receiving any firearm.

115.    Plaintiff will continue to be denied the right to purchase, possess, and/or receive any firearm so long as he continues to be identified by Defendants to, *inter alia*, NICS and/or the FBI as an individual who has been "involuntarily committed" to a mental health facility.

116.    Plaintiff seeks a declaration from this Court that being subject to an "emergency evaluation and observation" under MHL § 9.39 without a conversion to an involuntary commitment under MHL § 9.27 and/or § 9.37 is not a basis for inclusion in the State's NICS reporting database and does not render an individual "a person prohibited from purchasing, possessing, and/or receiving firearms."

117.    Plaintiff seeks a declaration from this Court that reporting individuals to NICS who were admitted to a hospital under MHL § 9.39 and released without a conversion to MHL § 9.27 and/or § 9.37 violates the Second Amendment.

118.    Each Defendant acted knowingly, intentionally, maliciously and/or with deliberate indifference by (i) maintaining Plaintiff's information in the State's mental health database as a prohibited person with the intention of preventing him from purchasing and/or possessing firearms, (ii) communicating information to NICS and/or DCJS about Plaintiff with the intention that NCIS would identify Plaintiff as a prohibited person.

119.    It is reasonably foreseeable that records of individuals who were not "involuntarily committed to a mental institution" will be collected, retained, modified, and/or transmitted to DCJS and/or NICS because, *inter alia*, Defendants' own denial letter references the wrong standard - "involuntary *admission*" – rather than "involuntary commitment."

120.    Defendants' conduct has caused widespread violations of the Second Amendment rights of numerous non-prohibited individuals throughout the state who have been falsely reported to NICS as individuals who have been involuntarily committed to a mental institution.

121.    Widespread violations of the Second Amendment exist because of Defendants' implementation of policies and procedures that require and/or authorize their staff, agents, and/or servants to report individuals to NICS as prohibited persons who were only subject to emergency observation and evaluation.

122.    The continuation of Defendants' policies, practices, and/or their deliberate indifference will continue to cause widespread violations of the constitutional rights of Plaintiff and numerous other similarly situated individuals.

123.    There is no pre-deprivation due process provided by Defendants for individuals who were only subject to emergency observation and evaluation.

124.    While OMH purports to have a "Certificate of Relief" process that, if granted, removes an individual from the State reporting database, Defendants enforce and implement a

20

policy that prohibits the automatic removal from the SAFE Act database of individuals who, as MHL § 9.39 admissions, were not "involuntarily committed" and should not have been in included the database in the first instance.

125.    Defendants' actions as set forth herein have caused Plaintiff to suffer, *inter alia*, the violation of his Second Amendment rights resulting in *per se* compensatory damages in at least a nominal amount, , pain and suffering, loss of the use and enjoyment of his property (firearms), reputational harm, emotional upset and the physical manifestations of same, embarrassment, and frustration.

## INJUNCTIVE RELIEF ALLEGATIONS

126.    Defendants are causing Plaintiff to suffer an injury-in-fact by prohibiting his exercise of the rights protected by the Second Amendment.

127.    Defendants' conduct has permanently banned Plaintiff's ability to lawfully purchase, possess, and/or receive firearms.

128.    Defendants' conduct is unauthorized and without any legal privilege. Plaintiff does not fit the criteria for Defendants' collection, retention, modification, and/or transmission to NICS and/or for being reported to NICS as a person prohibited from purchasing, possessing and/or receiving firearms due to an involuntary commitment to a mental institution and/or adjudication as mentally defective within the meaning of 18 U.S.C. § 922(g) and/or state law.

129.    Defendants deny the allegations set forth herein.

130.    Without the requested injunctive relief, Plaintiff will continue to be prevented from lawfully purchasing, possessing and/or receiving firearms.

**AS AND FOR A FIRST CAUSE OF ACTION**

**[Second Amendment, 42 U.S.C. § 1983]**

131.    Repeats and realleges paragraphs 1 through 130 as if set forth in their entirety herein.

132.    Under the theory that Defendants are liable to Plaintiff for violating his Second Amendment rights. 42 U.S.C. § 1983.

**AS AND FOR A SECOND CAUSE OF ACTION**

**[Fourteenth Amendment – Pre-deprivation Due Process, 42 U.S.C. § 1983]**

133.    Repeats and realleges paragraphs 1 through 132 as if set forth in their entirety herein.

134.    Under the theory that Defendants are liable to Plaintiff for violating his Fourteenth Amendment right to due process. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment and order:

- Declaring that being subject to an "emergency evaluation and observation" under MHL § 9.39 without a conversion to an involuntary commitment under MHL §§ 9.27 or 9.37 does not render an individual "a person prohibited from purchasing, possessing, and/or receiving firearms";

- Declaring that reporting individuals to NICS who were admitted to a hospital under MHL § 9.39 and released without a conversion to MHL § 9.27 and/or § 9.37 violates the Second Amendment.

- Declaring that Defendants' failures to institute a process and procedure for notifying individuals when (and that) their personal identifying information has been entered into the SAFE Act database for NICS reporting purposes identifying them as having been

"involuntarily committed" violates the Fourteenth Amendment right to pre-deprivation due process rights of Plaintiff and all similarly situated people;

- Granting a permanent injunction against Defendants from collecting, retaining, modifying, and/or transmitting the records and personal identifying information to NICS, the FBI, or any other law enforcement agency and third party of individuals who have been admitted to a mental health facility for emergency evaluation and observation under MHL § 9.39 who were not thereafter converted to an "involuntary commitment" under MHL §§ 9.27 or 9.37, including Plaintiff;

- Granting Plaintiff compensatory damages against the individual defendants;

- Granting Plaintiff punitive damages against the individual defendants;

- A declaration that Plaintiff is the prevailing party of this action for purposes of an award of reasonable attorney's fees under 42 U.S.C. § 1988;

- An award of reasonable statutory attorney's fees under 42 U.S.C. § 1988;

- An award of costs and disbursements; and

- Such other, further, and different relief as this Court may deem just and proper.

Dated: March 28, 2025
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff*

By:     _____/s/_____
Amy L. Bellantoni, Esq.
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)
abell@bellantoni-law.com